## Richmond

**SHARON LYNNE BOTTOMS**

v.

**PAMELA KAY BOTTOMS**

No. 1930-93-2

Decided June 21, 1994

COUNSEL

Donald K. Butler (Player B. Michelson; Stephen B. Pershing; William B. Rubenstein; Ruth E. Harlow; Marc E. Elovitz; Morano, Colan & Butler, on briefs), for appellant.

R. R. Ryder, for appellee.

*Amici Curiae*: American Academy of Child and Adolescent Psychiatry, American Psychological Association, National Association of Social Workers, Inc., and Virginia Chapter of the National Association of Social Workers, Inc. (Carolyn F. Corwin; Christopher A. Crain; E. Gary Spitko; Steven W. Bricker; Covington & Burling; Bricker & Associates, on brief), for appellant.

*Amicus Curiae*: American Academy of Matrimonial Lawyers (Lawrence D. Diehl; Cynthia L. Green; Melvyn B. Frumkes; Elser, Greene & Hodor; Melvyn B. Frumkes & Associates, on brief), for appellant.

*Amici Curiae*: National Center for Lesbian Rights, Lambda Legal Defense and Education Fund, Inc., Gay and Lesbian Advocates and Defenders, National Lesbian and Gay Law Association, Bay Area Lawyers for Individual Freedom, NOW Legal Defense and Education Fund, Women's Law Project, and Northwest Women's Law Center (Abby Abinanti; Elizabeth Hendrickson; Paula Ettelbrick; Rachel Bernstein; Paula Brantner; Catherine Stearne; Shannon Minter; Pia J. North, on brief), for appellant.

OPINION

**COLEMAN, J.**—In this child custody appeal, we find the evidence insufficient to support the trial court's decision to remove custody of a three-year-old child from his natural parent, the mother, and to grant custody to a third party, the child's maternal grandmother. As in all child custody cases, we are governed by the constant that a child's best interest controls. A child's best interest is presumed to be served by being in the custody of the child's natural parent, rather than a non-parent. A non-parent is granted custody over a parent only when the parent is unfit to have custody of the child or when continued custody with the parent will be deleterious to the child.

In this case, the evidence fails to prove that Sharon Bottoms, the child's mother, abused or neglected her son, that her lesbian relationship with April Wade has or will have a deleterious effect on her son, or that she is an unfit parent. To the contrary, the evidence showed that Sharon Bottoms is and has been a fit and nurturing parent who has adequately provided and cared for her son. No evidence tended to prove that the child will be harmed by remaining with his mother. We hold, therefore, that the trial court abused its discretion by invoking the state's authority to take the child from the custody of his natural mother, Sharon Bottoms, and by transferring custody to a non-parent, Kay Bottoms, the child's maternal grandmother.

## I. THE EVIDENCE

In 1989, Sharon Bottoms married Dennis Doustou. They separated when Sharon was pregnant with their son, who was born in 1991. The 1991 divorce decree awarded custody of the child to Sharon Bottoms. Doustou has not been actively involved in his

son's life since the divorce. During the three years following the divorce, Sharon Bottoms dated another man, lived with her cousin, lived with two lesbians, and in 1992, began living with April Wade. During this time, Sharon Bottoms had legal custody of her son, but she frequently relied on her mother, Kay Bottoms, to keep and care for the child. Kay Bottoms estimated that she had kept the child most of the time after his birth.

In January 1993, Sharon Bottoms informed her mother that her son would be spending less time at her mother's house because of Tommy Conley's presence there. Tommy Conley was Kay Bottoms' live-in male companion. The two had lived together and reared Sharon Bottoms from the time Sharon was a child. Sharon Bottoms explained to her mother that she was taking her son out of the household because while she, Sharon, was growing up, Tommy Conley had sexually abused her over 800 times. Kay Bottoms was shocked and upset by the accusations, but she later decided that the accusations were not altogether unfounded.

Shortly after the conversation between Sharon and Kay Bottoms, Kay filed a petition with the juvenile and domestic relations district court seeking custody of her grandson. She asked Tommy Conley to move out of the house during the custody dispute because her lawyer "thought it would be best." The circuit court ultimately granted Kay Bottoms custody of her grandson, and this appeal followed.

Sharon Bottoms acknowledges that she is a lesbian and that she shares a residence with April Wade, her lesbian companion. Sharon Bottoms admits that she and April Wade engage in consensual sexual acts in the privacy of their residence. She testified that they share the same bed and engage in oral sex once or twice a week. For a period of time, when the child was very young, the child's crib was in the bedroom where they slept. Sharon Bottoms testified that she and April Wade have never engaged in any type of sexual activity in her son's presence, nor has she exposed him to sexual conduct of any type. She admits that she and April Wade have displayed some affection in the child's presence by hugging, kissing, or patting one another on the bottom. All the psychological evidence introduced on this issue was to the effect that Sharon Bottoms' open lesbian relationship has had no visible or discernible effect on her son.

While the child has spent considerable time with his grandmother, Kay Bottoms, the evidence proved that he and his mother, Sharon Bottoms, have had a close, loving mother-child relationship. Sharon Bottoms has adequately provided him with the basic necessities of life, including food, clothing, and shelter.

On two occasions, Sharon Bottoms spanked the child on the leg "too hard." The evidence did not show that the spankings bruised or injured the child. The evidence showed that Sharon Bottoms had punished the child by making him stand in a corner and had on occasion cursed in the child's presence. However, she has not physically abused the child, neglected him, or endangered or threatened his life, physical safety, or well-being. The psychological evaluations stated that Sharon Bottoms is "warm" and "responsive" with her son, and that he "behave[s] as if entirely secure and at ease with his mother, it being a very familiar and comfortable situation for him."

Kay Bottoms testified that on one occasion, Sharon Bottoms left the child at Kay's home for a week without telling her how she could be reached. No evidence showed that Sharon Bottoms had ever left the child with an irresponsible person or unattended. Until recently, Sharon Bottoms had been unemployed. She has been receiving Aid to Dependent Children benefits. The evidence shows that April Wade is a recovering alcoholic. The child's father, Dennis Doustou, pays no child support.

## II. THE TRIAL COURT RULING

The trial court ruled that because Sharon Bottoms lives in a sexually active lesbian relationship and engages in illegal sexual acts, she is an unfit parent as a matter of law. The trial court held as follows:

> Sharon Bottoms has . . . admitted . . . that she is living in an homosexual relationship. . . . She is sharing . . . her bed with . . . her female lover. . . . Examples given were kissing, patting, all of this in the presence of the child. . . . There is no case directly on point concerning all these matters. In the case of *Roe v. Roe*, it's certainly of assistance to me in reaching a decision here today. I will tell you first that the mother's conduct is illegal. . . . I will tell you that it is the opinion of the court that her conduct is immoral. And it is

the opinion of this court that the conduct of Sharon Bottoms renders her an unfit parent. However, I also must recognize, and do recognize, that there is a presumption in the law in favor of the custody being with the natural parent. And I then ask myself are Sharon Bottoms' circumstances of unfitness . . . of such an extraordinary nature as to rebut this presumption. My answer to this is yes [under] *Roe v. Roe.* . . . I further find that in addition to this, there is other evidence . . . which is unrebutted of the cursing, the evidence of the child standing in the corner.

The trial judge granted custody to Kay Bottoms and visitations on Mondays and Tuesdays to Sharon Bottoms, provided that no visitations be in the home shared with April Wade or in April Wade's presence.

## III. THE LEGAL PRINCIPLES

Virginia law presumes a "child's best interests will be served when in the custody of its [natural] parent." *Judd v. Van Horn*, 195 Va. 988, 996, 81 S.E.2d 432, 436 (1954). The parental presumption arises when a third party undertakes to deprive a natural parent of the custody of his or her child. Although a child custody award may be temporary and subject to modification as circumstances change, the relationship between a child and its parent is one of the most jealously protected rights in Anglo-Saxon jurisprudence. *Walker v. Brooks*, 203 Va. 417, 421, 124 S.E.2d 195, 198 (1962) (the rights of a natural parent "are, if at all possible, to be respected, such rights being founded upon natural justice and wisdom, and being essential to the peace, order, virtue and happiness of society").

A child's natural and legal right to the care and support of a parent and the parent's right to the custody and companionship of the child should only be disrupted if there are compelling reasons to do so. *Bailes v. Sours*, 231 Va. 96, 100, 340 S.E.2d 824, 827 (1986). Therefore, in order for a third party, even a grandparent, to be awarded custody of a child in preference to the child's natural parent, the third party must prove by clear and convincing evidence that the parent is unfit or that special circum-

stances give an extraordinary reason for a transfer of custody.[1] *Id.* This Court gives great deference to a trial court's custody determination based upon *ore tenus* hearings and will not disturb the decision "unless plainly wrong or without evidence to support it." *Simmons v. Simmons*, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986).

■ The custody dispute between Sharon and Kay Bottoms is not governed by the same principles that control a dispute between two parents. When natural parents are contesting for custody of their child, the court balances the equities between the parents and determines with which parent will the child's best interests be served. *See Roe v. Roe*, 228 Va. 722, 723, 324 S.E.2d 691, 691 (1985). The court determines which parent will be the more fit and suitable custodian to care for the child's needs based on the current and foreseeable circumstances.

■ However, unlike parental custody disputes wherein the parents stand on equal legal footing, when a third party attempts to divest custody of a child from a natural parent, the presumption of parental fitness must be rebutted before a court may consider whether a third party would be a fit or proper custodian. *Wilkerson v. Wilkerson*, 214 Va. 395, 397-98, 200 S.E.2d 581, 583 (1973). Thus, unless a parent, by his or her conduct or condition, is unfit or is unable and unwilling to provide or care for a child, a court is not entitled to consider whether a third party might be better able to care for a child. Unfortunately, and all too frequently, foster parents or third parties would be more willing and better able to provide a loving and nurturing environment for a child than would the child's parents; however, custody of a child may not be taken from a parent on that basis. Even when the parental level of care may be marginally satisfactory, courts may not take custody of a child from his or her parents simply because a third party may be willing and able to provide better care for the child. *Id.*

---

[1] When a parent has abandoned a child, or entered into an agreement relinquishing custody of a child, or previously been divested of custody by a court's order, the presumption of parental fitness is rebutted and the controlling rule is the child's best interest. *Bailes*, 231 Va. at 100, 340 S.E.2d at 827. The parties concede that none of those factors exist that would rebut the presumption in favor of the natural mother.

■ "When determining whether [a] nonparent's evidence is sufficient to rebut the presumption in favor of granting custody to a natural parent, the trial court must consider all the evidence before it." *Mason v. Moon*, 9 Va. App. 217, 220, 385 S.E.2d 242, 244 (1989). The proof of parental unfitness or that continued custody with the natural parent will be harmful to the child must be clear and convincing. *Bailes*, 231 Va. at 100, 340 S.E.2d at 827. No credible evidence proves that Sharon Bottoms is an unfit parent or that her having custody of her son will be harmful to his physical, emotional, or psychological well-being.

The most that can be said against Sharon Bottoms, insofar as her parenting is concerned, is that on two occasions she spanked her son "too hard," on occasion she swore in his presence, she had him stand in a corner, and on occasion she had failed to change his diaper as soon as conditions required. Sharon Bottoms had lived in four different residences in different relationships in a three-year period, and she had not been regularly employed. On one occasion, Sharon Bottoms had left her son with Kay Bottoms, the grandmother, for a week without informing the grandmother how she could be reached.

Although Sharon Bottoms' parenting during this three-year period was far from ideal, she was not indifferent to her child's well-being. Her disciplining of the child, even if by some standards considered intemperate or inappropriate, was not abusive. Her lifestyle in moving several times in a short period, in being unemployed for a time, and in failing to inform her mother of her whereabouts for a week were not acts of neglect or abuse sufficient to render her an unfit custodian. At all times, Sharon Bottoms either cared for the child or assured that proper care was provided for the child. No evidence suggested that any of Sharon Bottoms' actions resulted in psychological, emotional, or physical harm to the child or that her actions constituted neglect or abuse.

The psychological evaluations admitted into evidence indicated that Sharon Bottoms' son is a "happy, well-adjusted youngster" with an "out-going, engaging manner . . . capable of forming and sustaining both emotional and social attachments to others." The psychological reports concluded that Sharon Bottoms is "warm" and "responsive" with her son and that "[he] behave[s] as if entirely secure and at ease with his mother, [being with her is] . . . very familiar and comfortable . . . for him."

The trial judge based his finding of Sharon Bottoms' parental unfitness on the fact that she is living in an open lesbian relationship with April Wade and that the two engage in sodomy, an illegal sexual act, in the home where the child would reside. Certainly, those facts, which define the nature of the relationship between a custodial parent and a resident of the household where the child would reside, are the most critical and significant factors in this case for determining whether this parent is unfit or whether continued parental custody will be harmful or deleterious to the child. All factors must be considered, but in this instance, the open lesbian relationship and illegality of the mother's sexual activity are the only significant factors that the court considered in finding Sharon Bottoms to be an unfit parent.

■ We agree with the trial court that the nature of the relationship between a parent and the parent's live-in companion where the child resides may affect the type of conduct and behavior to which a child will be exposed and, thus, profoundly affect the child. The Supreme Court of Virginia has expressly said that a lesbian "lifestyle" is one factor "to [be] . . . considered in determining [a woman's] fitness as a mother." *Doe v. Doe*, 222 Va. 736, 748, 284 S.E.2d 799, 806 (1981). A parent's behavior and conduct in the presence of a child influences and affects the child's values and views as to the type of behavior and conduct that the child will find acceptable.

■ The fact that a parent is homosexual does not *per se* render a parent unfit to have custody of his or her child. *Id.* Thus, the fact that a mother is a lesbian and has engaged in illegal sexual acts does not alone justify taking custody of a child from her and awarding the child to a non-parent, even though an award of custody may be only temporary. The fact that a parent has committed a crime does not render a parent unfit, unless such criminal conduct impacts upon or is harmful to the child, or unless other special circumstances exist aside from the parent's conduct that would render continued custody with the parent deleterious to the child.

■ A parent's sexual behavior, particularly a parent's sexual indiscretions, in a child's presence is conduct which may render a parent unfit to have custody of a child. *See Ford v. Ford*, 14 Va. App. 551, 554, 419 S.E.2d 415, 417 (1992); *Sutherland v. Sutherland*, 14 Va. App. 42, 43, 414 S.E.2d 617, 618 (1992) (het-

erosexual parent's adulterous relationship is only one factor that court should consider in making custody determination). A parent's private sexual conduct, even if illegal, does not create a presumption of unfitness. *Id.* In order for the state or a third party to take custody of a child from its natural parent, more is required than simply showing that a parent has engaged in private, illegal sexual conduct, lacks ideal parenting skills, or is not meeting society's traditional or conventional standards of morality. A court will not remove a child from the custody of a parent, based on proof that the parent is engaged in private, illegal sexual conduct or conduct considered by some to be deviant, in the absence of proof that such behavior or activity poses a substantial threat of harm to a child's emotional, psychological, or physical well-being.

Of course, courts must not delay in granting a remedy until a parent's conduct or behavior has harmed the child; the rule of law does not require that the damage sought to be avoided must occur before a court may act to prevent injury or to remedy a harmful situation. However, before courts may deprive a parent and child of their fundamental rights to be together and to associate with one another, the evidence must show that the parent is unfit and that the child is subjected to conduct and behavior that will harm the child. A court may not simply surmise, speculate, or take notice that because a parent engages in private, sexual conduct, even that which is illegal or conduct that is perceived by some as immoral or antisocial and to which the child is not subjected and which does not affect the child, the parent is unfit or the child is being harmed. *Id.* at 746, 284 S.E.2d at 805.

In *Mason v. Moon*, we reversed the trial court's decision to award custody of a child to her grandmother instead of her parent. In that case, clear and convincing evidence was not presented that the child would be adversely affected by living in the residence with her stepfather, who had killed the child's father in her presence. 9 Va. App. at 222-23, 385 S.E.2d at 245-46. In *Ferris v. Underwood*, 3 Va. App. 25, 28, 348 S.E.2d 18, 20 (1986), we found the evidence insufficient to rebut the presumption favoring a parent, even though a prostitute, who was the mother's sister, frequently visited in the home where the child lived. *See also Phillips v. Kiraly*, 200 Va. 345, 105 S.E.2d 855 (1958) (aunt and uncle denied custody because evidence that the father was irresponsible, took pictures of nude women, and had been a "peeping

tom" did not rebut parental presumption).

 Even when a natural parent falls short of society's accepted standards of behavior, such as the parents in the *Mason, Ferris* and *Phillips*, unless proof of harm to the child or evidence of neglect or abuse is shown, the state will not intervene to take custody of a child from its natural parent.

In Sharon Bottoms' case, the trial court found that Sharon Bottoms engaged in illegal sexual activity[2] and that her open lesbian relationship rendered her an unfit parent "as a matter of law." The trial court erroneously adopted a *per se* approach in finding Sharon Bottoms to be an unfit parent without finding that she engaged in conduct or exposed her son to conduct that would be harmful to him. In declaring as a matter of law that Sharon Bottoms is an unfit parent, the trial court misapplied the Supreme Court's decision in *Roe v. Roe*, 228 Va. 722, 324 S.E.2d 691 (1985).

First, the *Roe* case does not stand for the proposition that a homosexual parent is *per se* unfit to have custody of a child. The Court stated in *Roe*, "[a]lthough we decline[] to hold that every lesbian mother or homosexual father is *per se* an unfit *parent* . . . [this] father's continuous exposure of the child to his immoral and illicit relationship renders him an unfit and improper custodian as a matter of law." *Id.* at 727, 324 S.E.2d at 694; *see also Doe*, 222 Va. at 748, 284 S.E.2d at 806.

Second, the *Roe* decision has little or no application to this case because *Roe* involved a dispute between two parents over which was the preferred custodian. In *Roe*, the presumption of parental fitness had no application. In *Roe*, the court was only required to determine that, as between the parents, the child's best interests would be best served by granting custody of the child to the

---

[2] The trial court noted that Sharon Bottoms' admission that she engaged weekly in oral sex with April Wade violated Code § 18.2-361 ("crimes against nature"), which makes sodomy a Class 6 felony.

In *Sutherland*, we permitted a mother living in an adulterous relationship to retain custody of her children over the natural father's objections, despite the fact that adultery is a crime in Virginia. *See* Code § 18.2-365. 14 Va. App. at 43, 414 S.E.2d at 618. *See Brinkley v. Brinkley*, 1 Va. App. 222, 224, 336 S.E.2d 901, 902 (1985) (an adulterous relationship, "without more, is an insufficient basis upon which to find that a parent is an unfit custodian of his or her child").

mother rather than to the father, who was engaged in a homosexual relationship to which the child was openly exposed. *Id.* at 727-28, 324 S.E.2d at 693-94. Although aspects of Sharon Bottoms' behavior were similar to the father's conduct in *Roe* because Sharon Bottoms had hugged and kissed and displayed some affection toward her lesbian partner in the presence of her child, the father in *Roe* had exposed his daughter to more intimate behavior of a sexual nature, which had an impact upon the child. In *Roe*, the nine-year-old daughter was visibly distressed by her father's homosexual relationship after she witnessed the two men "hugging and kissing and sleeping in bed together." *Id.* at 724, 324 S.E.2d at 692. In *Roe*, the father had parties at his house where other homosexuals would "engage in similar behavior in the child's presence." *Id.* Although Sharon Bottoms resides with April Wade in an open lesbian relationship, no evidence showed that they engaged in illegal sexual behavior in the child's presence. No evidence showed that the child has or will suffer any emotional or psychological distress as a result of the relationship. Where a parent exposes a child to an illicit sexual relationship, as in *Roe*, the Supreme Court has upheld denying a parent custody; however, where parents have shielded the child from illegal heterosexual adultery, as in the *Ford* and *Sutherland* cases, we have held the parents not to be unfit.

By applying *Roe* to a custody dispute between a parent and a third party, the trial court extended *Roe* beyond its precedential boundaries. Applying the holding in *Roe* to a custody dispute with a non-parent would allow a third party who may be better able or more fit or suitable to care for a child to be preferred for custody of the child over its natural parent solely because the parent is involved in a homosexual relationship. If we were to so hold, social service agencies would have the duty to take children from parents solely because a parent is homosexual and is living in a homosexual relationship.

The Supreme Court of Virginia has held that adverse effects of a parent's homosexuality on a child cannot be assumed without specific proof. *See Doe*, 222 Va. at 746, 284 S.E.2d at 805. "There is no evidence that children who are raised with a loving couple of the same sex are any more disturbed, unhealthy, or maladjusted than children raised with a loving couple of mixed sex." *Id.* at 748, 284 S.E.2d at 806 (quoting *Bezio v. Patenaude*, 410

N.E.2d 1207, 1215-16 (Mass. 1980)). The psychological testimony presented in this case was to the effect that a parent's homosexual relationship alone does not harm a child emotionally or psychologically or make the parent an unfit custodian. The social science evidence showed that a person's sexual orientation does not strongly correlate with that person's fitness as a parent. No evidence was presented to refute these studies. No evidence was presented that tended to prove that Sharon Bottoms' living arrangement with April Wade and their lesbian relationship have harmed or will harm Sharon Bottoms' son.

For these reasons, we hold that the trial court erred in finding that Sharon Bottoms' lesbian relationship alone[3] constituted clear and convincing evidence of parental unfitness. The trial court erred in holding that the evidence "of the cursing [and] . . . of the child standing in the corner" and the fact that Sharon Bottoms is a lesbian who lives with her lesbian companion are "of such an extraordinary nature as to rebut the presumption [of parental fitness]."

Because we hold that the presumption favoring Sharon Bottoms in this case was not rebutted, we do not decide whether the grandmother, Kay Bottoms, could best provide for the child's needs. *See Wilkerson*, 214 Va. at 397, 200 S.E.2d at 583.[4] Accordingly, we

---

[3] If we held that an open lesbian relationship rebutted the parental presumption as a matter of law, we would be the only state court recently to do so. Two recent decisions have awarded grandparents custody of a child over the objections of a homosexual parent, but in both cases factors other than sexual orientation compelled the courts to grant custody to the grandparents.

In *McGinnis v. McGinnis*, 567 So. 2d 390, 392 (Ala. Civ. App. 1990), the Alabama Court of Civil Appeals granted custody to the paternal grandparents because the lesbian mother signed a voluntary relinquishment of custody form and frequently used illegal drugs in the home.

In *White v. Thompson*, 569 So. 2d 1181, 1184 (Miss. 1990), the Mississippi Supreme Court granted custody to the paternal grandparents because the lesbian mother used marijuana when the children were at home, frequently left them unsupervised, and failed to adequately clothe them during the winter.

Unlike the Alabama and Mississippi cases, where parental unfitness was established due to relinquishment and dereliction of basic parental responsibilities, no evidence presented in this case established or tended to establish unfitness.

[4] We note, however, that "[a]s between awarding custody to a parent or a third party, the evidence must also be clear and convincing that the welfare and best interests of the child will be served by awarding custody to someone other than the parent." *Id.* In *Walker v. Fagg*, 11 Va. App. 581, 586, 400 S.E.2d 208, 211 (1991), even though the grandparents rebutted the presumption in favor of the father by proving the father was

hold that Sharon Bottoms is not to be deprived of custody of her son upon the present record. We reverse and vacate the circuit court's order and remand the case with directions that the circuit court enter an order effectuating the resumption of custody by the mother of her son.

*Reversed and remanded.*

Moon, C.J., and Elder, J., concurred.

---

unfit because he neglected his children, abused alcohol and had been found guilty of killing his wife, this Court nevertheless held that the best interests of the children required that they remain temporarily with the father pending an appeal of his murder conviction. This Court held that "a determination of unfitness [does not] require[ ] *ipso facto* a denial of parental custody." *Id.*