COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Benton and Bray
Argued at Richmond, Virginia

SHARON LYNNE BOTTOMS

v.          Record No. 2157-96-2     MEMORANDUM OPINION[*] BY
                                     JUDGE RICHARD S. BRAY
PAMELA KAY BOTTOMS                        JULY 29, 1997

               FROM THE CIRCUIT COURT OF HENRICO COUNTY
                     Buford M. Parsons, Jr., Judge

          Donald K. Butler (Player B. Michelson;
          Michael Adams; Matt Coles; Mary Bauer;
          Morano, Colan & Butler; Lesbian and Gay
          Rights Project American Civil Liberties
          Union; American Civil Liberties Union of
          Virginia, on briefs), for appellant.

          Torrence M. Harman (Harman & Harman, P.C., on
          brief), guardian ad litem for Kenneth Tyler
          Doustou.

          R. R. Ryder for appellee.


     The instant proceedings were commenced in the Henrico County

Juvenile and Domestic Relations District Court upon petitions of

Sharon Lynne Bottoms (mother) praying (1) for custody of her

infant son, previously awarded to his maternal grandmother,

Pamela Kay Bottoms (grandmother), by decree of the trial court,

and (2) an order requiring grandmother to "show cause why she

should not be held in contempt . . . for her repeated violations

of the visitation terms" of such decree.  In response,

grandmother petitioned for termination or further restriction of

mother's rights of visitation.

     Following appointment of a guardian ad litem for the child,

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

the district court conducted an _ore tenus_ hearing, dismissed the "show cause" and declined to disturb either the custody or visitation provisions of the existing decree. Mother appealed to the circuit court, expressly withdrawing her petition for custody and challenging only the visitation adjudication. The trial court subsequently also conducted an _ore tenus_ hearing, which culminated in a decree dismissing mother's "show cause" petition and substantially modifying the terms of visitation.

On appeal to this Court, mother challenges those provisions of such decree which delimit the frequency, duration and situs of both regular and holiday visitation and expressly prohibit all "contact . . . , including verbal contact[,]" between the child and April Wade, mother's female housemate and sexual partner.[1] Mother complains that such constraints improperly restricted access to the child, contrary to the rights and interests of both mother and child, and resulted from the trial court's unwillingness to consider relevant evidence in accordance with statute. Mother also contends that the court erroneously declined to order mother, grandmother, and child "into counseling." We agree that the court failed to consider proper evidence and reverse the disputed decree.

The parties are fully conversant with the record, and a

---

[1]Mother's relationship with April Wade was fully discussed by this Court and the Supreme Court of Virginia in _Bottoms v. Bottoms_, 18 Va. App. 481, 444 S.E.2d 276 (1994), _rev'd_, 249 Va. 410, 457 S.E.2d 102 (1995), and remains substantially unchanged on this record.

recitation of the facts is unnecessary to this memorandum opinion.

It is well established that "[t]he authority vested in a trial court to decide issues concerning the . . . custody . . . [and] visitation rights of the non-custodial parent . . . is a matter of judicial discretion which courts must exercise with the welfare of the children as the paramount consideration." Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 11 (1986); see Code §§ 20-107.2, 20-124.2. Guided by those factors enumerated in Code § 20-124.3, the court must fashion "visitation arrangements" which at once promote the "best interests" of the infant, Code § 20-124.2, and the "desirable objective . . . that the child . . . continue to receive the noncustodial parent's affection and nurture through the mechanism of visitation." M.E.D. v. J.P.M., 3 Va. App. 391, 397, 350 S.E.2d 215, 219 (1986). However, "while the legal rights of a parent should be respected . . . , those . . . rights may be disregarded if demanded by the interests of the child." Bottoms v. Bottoms, 249 Va. 410, 419, 457 S.E.2d 102, 108 (1995).

Manifestly, "[e]ach case . . . require[s] . . . considerable judgment in placing conditions upon the frequency, duration, place, and extent of visitation" appropriate to the particular circumstances. Eichelberger, 2 Va. App. at 413, 345 S.E.2d at 12. The court must carefully scrutinize the entire record,

weighing the pertinent statutory factors and "[s]uch other [evidence] as the court deems necessary and proper to the determination," Code § 20-124.3, including "the nature of the home environment and moral climate" which may affect the child. Bottoms, 249 Va. at 419, 457 S.E.2d at 107; see Carrico v. Blevins, 12 Va. App. 47, 50-51, 402 S.E.2d 235, 237 (1991). Having once adjudicated the issues of custody and visitation, the court retains jurisdiction to modify a decree "when subsequent events render such action appropriate for the child's welfare." Eichelberger, 2 Va. App. at 412, 345 S.E.2d at 12; see Code § 20-108.

Here, in restricting mother's visitation with the child "solely" to her residence and prohibiting "contact . . . in any manner" with April Wade, the court declared that it was "bound to [the] precedence" of Roe v. Roe, 228 Va. 722, 324 S.E.2d 691 (1985). In Roe, the Court expressly "declined to hold that every lesbian mother or homosexual father is per se an unfit parent," noting that "conduct[] in the child[]'s presence" and the attendant "impact of [such] relationship upon [the] child" were the relevant inquiries, not simply the sexual status of the parent or parents. Id. at 727, 324 S.E.2d at 693-94. Mindful, however, that "'[t]he moral climate in which children are to be raised'" warrants "'the most careful consideration in a custody proceeding,'" the Court concluded that, "[i]n the circumstances

of this case," the "best interests of the child"[2] dictated divestiture of custody from the homosexual father, subject to a residual right of specifically limited visitation. Id. at 726, 728, 324 S.E.2d at 693, 694 (emphasis added) (quoting Brown v. Brown, 218 Va. 196, 199, 237 S.E.2d 89, 91 (1977)).

The issue of parental sexual preference was again undertaken by the Supreme Court in reviewing an earlier custody decree in the instant cause. After reaffirming that mother's sexual persuasion did not render her "per se an unfit parent," the court recognized such circumstance as reflective of the "home environment and moral climate," an "important consideration." Bottoms, 249 Va. at 419, 457 S.E.2d at 107-08 (emphasis added); accord Doe v. Doe, 222 Va. 736, 748, 284 S.E.2d 799, 806 (1981); Carrico, 12 Va. App. at 50-51, 402 S.E.2d at 237.

Thus, both Code § 20-124.3 and controlling appellate decisions clearly instruct that the parental rights of custody and related visitation suitable to each instance must evolve from a myriad of considerations, all calculated to exalt and promote the best interests of the child. While issues of adult sexuality and related behavior are significant to an adjudication of visitation, such factors must be assessed by the court together with other relevant circumstances and balanced in a visitation

---

[2]The record in Roe indicated that the child was "unhappy" in her homosexual father's home, "hate[d]" her father's companion and wished a return to her mother. 228 Va. at 724, 324 S.E.2d at 692.

arrangement which both benefits and protects the child.

Here, however, the trial court misconstrued <u>Roe</u> to require a disposition based solely upon mother's sexual status, implicitly ignoring evidence of other pertinent statutory factors and without regard to evidence of the <u>impact</u> of attendant conduct on the child. The disputed order, therefore, did not emanate from a proper analysis of relevant evidence. Similarly, the trial court erroneously declined to consider evidence of the relationship between mother and grandmother. Clearly, the interaction of mother and grandmother, and its effects upon mother's visitation with the child and upon the child, is pertinent to the court's resolution of the instant petition and a factor contemplated by the provisions of Code § 20-124.3.

Accordingly, we reverse the decree and remand to the trial court for reconsideration of the evidence consistent with this opinion, including any additional evidence deemed appropriate by the court to a proper disposition of the petitions.

<u>Reversed and remanded.</u>