COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Benton, Elder, Bray,
        Annunziata, Bumgardner, Frank, Humphreys, Clements
        and Agee
Argued at Richmond, Virginia


FRANCIS E. SHOUP
                                            OPINION BY
v.   Record No. 0098-00-4       JUDGE ROSEMARIE ANNUNZIATA
                                         DECEMBER 27, 2001
HEIDI S. SHOUP


                Upon a Rehearing En Banc

        FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                Kathleen H. MacKay, Judge

        Betty A. Thompson (Law Offices of Betty A.
        Thompson, Ltd., on briefs), for appellant.

        Valerie Szabo (Valerie Szabo, P.L.L.C., on
        brief), for appellee.


     This matter comes before the Court on a rehearing en banc

from a decision of a divided panel rendered February 27, 2001.

The panel affirmed the trial court's ruling that a provision of

the parties' child support agreement, which had been

incorporated into the final decree of divorce, was void and

unenforceable.  The provision that the trial court declined to

enforce provided for modification of child support upon

emancipation of each of the parties' children, according to a

standard set forth in the agreement.  The panel also reversed

the trial court's enforcement of a provision permitting

modification upon changes in child care expenses, and found

Francis E. Shoup ("father") in contempt and liable to Heidi S. Shoup ("mother") for arrearages of $33,838.20 plus interest and attorney's fees.  We granted father's petition for a rehearing en banc, stayed the mandate of that decision, and reinstated the appeal.  Upon rehearing en banc, we find the decree's provisions for future modification by agreement of the parties valid and enforceable and hold that the trial court erred in its calculation of arrearages and in finding the father in contempt of its support order.  We also hold that the trial court properly enforced the provision for modification upon a change in child-care costs.  Therefore, we affirm in part and reverse and remand in part.

## I.

## Background

The parties were divorced by a final decree of divorce entered by the Fairfax County Circuit Court on September 1, 1994.  At the time of the divorce, the parties had three minor children:  Allison Elliot Shoup, born November 30, 1977; Francis Elliot Shoup, IV, born June 8, 1979; and Kyle A.M. Shoup, born June 20, 1985.  The final divorce decree incorporated the parties' June 27, 1994 Custody, Support and Property Settlement Agreement.[1]  In accordance with the parties' agreement, the final

---

[1] The incorporated agreement provided, in relevant part:

5.  SUPPORT AND MAINTENANCE OF THE CHILDREN
a.  The Husband shall, . . . pay directly to the Wife the monthly base support amount of Two Thousand One Hundred and Seventy Seven Dollars ($2,177.00) per month, for the support and maintenance of the children of the parties . . . . This amount is the sum calculated for child support as [is] required by Section 20-108.2 of the Code of Virginia (1950, as amended), pursuant to the worksheet attached as Attachment A to this agreement. . . .

       *       *       *       *       *       *       *

c.  The parties agree that they shall split, in the same proportion as their annual gross incomes bear to their annual combined gross incomes, as calculated in Attachment A of this Agreement or as modified by a court in the future, any child care costs incurred on behalf of the children due to the employment of the custodial parent.  The Wife shall notify the Husband of any change in the amount of the child care costs.  In the event that child care costs rise in a month, the Husband shall be responsible for reimbursing the Wife on the first day of the next month for his proportionate share of such increases.  In the event that child care costs decline in a month, the Wife shall notify the Husband who shall reduce his payment of child care costs on the first day of the next month by his proportionate share of such decline.  Upon request by the Husband, the Wife annually will provide the Husband with a copy of canceled checks, tax deposits and such other information as Wife may maintain documenting the payment of child care costs for the period for which said information is requested.
d.  The Husband shall make consecutive monthly installments of the child support on the first day of each month until each child dies, marries, becomes self-supporting, reaches the age of eighteen (18) years or otherwise becomes emancipated, whichever event first occurs, except that support

– 3 –

decree ordered the father to pay $2,177 per month in child support to the mother. The decree also provided for a proportionate division of certain medical expenses and for reimbursement of child-care costs based on the parties' relative annual gross incomes as calculated in the support guideline worksheet, Attachment A to the agreement.

The oldest child, Allison, graduated from high school in June, 1995 and turned eighteen years of age on November 30, 1995. Beginning in October, 1995, the father unilaterally reduced the amount of support by approximately one-third to $1,452 per month. He continued making payments for child-care costs, although the mother, beginning in October, 1995 incurred none. In May, 1997, the parties' second child, Elliot, graduated from high school and turned eighteen one month later. The father again unilaterally reduced the amount of support by another one-third to $764 per month. Although the father unilaterally reduced the amount of support paid on each of these

---

shall continue to be paid for a child if he or she is a full-time high school student, not self-supporting and living in the home of the residential custodian, until he or she reaches the age of nineteen (19) years or graduates from high school, whichever first occurs.
e. If there is any change in circumstances, the parties shall follow the child support guidelines contained in § 20-108.2 of the Code of Virginia or its successor statute and any other relevant Virginia statutes and case law for determination of child support.

two occasions, the record shows that the mother did not object until she filed the present suit to collect the arrearages.

On April 13, 1999 the mother filed a petition for a rule to show cause against the father for failing to pay $2,177 per month in child support.  The matter was heard on June 24, 1999. In its letter opinion dated October 30, 1999, the trial court found the father to be in contempt of court and found that he was in arrears in his support payments from October, 1995 through May, 1999 because a support order may not be retroactively modified by the parties or without court approval.[2] Based on the parties' agreement as incorporated into the final decree, the trial court also awarded father a credit for his

_____

[2] In support of its decision, the trial court referred to our summary of the law in Goodpasture v. Goodpasture, 7 Va. App. 55, 58, 371 S.E.2d 845, 847 (1988):

> No support order may be retroactively modified.  Code § 20-108; Cofer v. Cofer, 205 Va. 834, 839, 140 S.E.2d 663, 667 (1965).  Past due support installments become vested as they accrue and are thereafter immune from change.  Id.  Parties cannot contractually modify the terms of a support order without the court's approval. Capell v. Capell, 164 Va. 45, 52, 178 S.E. 894, 896 (1935).  Nor does a party's passive acquiescence in nonpayment of support operate to bar that party from later seeking support arrearages.  Richardson v. Moore, 217 Va. 422, 423, 229 S.E.2d 864, 866 (1976).  Should circumstances change requiring alteration in the amount of support, a party's remedy is to apply to the court for relief.  Newton v. Newton, 202 Va. 515, 519, 118 S.E.2d 656, 659 (1961).

payments of child-care expenses that had not been incurred by the mother. The trial court entered an order dated December 7, 1999 finding the father in contempt and entered judgment against the father in the principal sum of $33,838.20, with interest at the judgment rate. It also awarded mother her attorney's fees.

## II.

## Analysis

Father raised the following issues for determination en banc: (1) whether the final decree which incorporated the parties' agreement pursuant to statute should have been upheld, including the provisions for future modification of child support; (2) whether the court erred by ignoring the statutory guidelines in determining child support arrearages where the incorporated agreement provided for the application of guidelines in computing child support in the event of a change of circumstances; (3) whether the panel's holding that the Shoup divorce decree was a nullity and void destroyed its vitality as an enforceable order and thereby relieved father from any alleged arrearages and from a charge of contempt; and (4) whether the trial court erred in ordering an award of attorney's fees to appellee. Mother argues that the child support modification provisions did not, in fact, authorize modification of child support payments without court approval and that a provision purporting to do so would improperly undermine the authority of the court to set child support awards. The issues

raised by the parties in this case bring into sharp relief the foundational principles of Virginia divorce law regarding the divorce court's jurisdiction to determine child support and the rights of the parties to resolve those issues by agreement.

Divorce and its incidents are matters rooted in and reflective of a state's public policy. The state is "directly interested in determining the status of its own citizens, and to this end can and does establish and enforce its own policy in relation to marriage and divorce . . . ." Heflinger v. Heflinger, 136 Va. 289, 308, 118 S.E. 316, 322 (1923). Consistent with this interest, the General Assembly enacted a statutory basis for the grant of divorce in the Commonwealth. Jackson v. Jackson, 211 Va. 718, 719, 180 S.E.2d 500, 500 (1971); Code § 20-107.2. The judicial authority granted in divorce matters encompasses the authority to determine child support. Code § 20-79.1.[3]

---

[3] The judicial authority granted in divorce matters also encompasses the power to determine property rights, Code § 20-107.2, establish spousal support, Code § 20-107.1, and resolve disputes regarding child custody and support, Code § 20-107.2. The divorce court also has been granted the power to enforce its decrees regarding divorce and its incidents. Campbell v. Campbell, 32 Va. App. 351, 356, 525 S.E.2d 145, 147 (2000) (holding that parties may "access the equitable powers of the court to enforce the decree"); Code § 20-124.2 (custody and visitation); Code § 16.1-292 (power to hold person in violation of spousal or child support order in contempt).

Under Virginia law, the grant of a divorce petition is a purely judicial function grounded in statute. Jackson, 211 Va. at 719, 180 S.E.2d at 500. Accordingly, the parties cannot, by agreement, effectuate a divorce. Foster v. Foster, 195 Va. 102, 104, 77 S.E.2d 471, 473 (1953). However, the parties can reach agreement on all other issues. Divorcing parents may and, indeed, are encouraged under Virginia public policy, to reach agreement respecting the care and support of their minor children. Morris v. Morris, 216 Va. 457, 459, 219 S.E.2d 864, 867 (1975) ("[P]ublic policy favors prompt resolution of disputes concerning the maintenance and care of minor children . . . . Voluntary, court-approved agreements promote that policy and should be encouraged."); Richardson v. Richardson, 10 Va. App. 391, 399, 392 S.E.2d 688, 692 (1990) ("Settlement agreements between parties to [divorce] lawsuits are designed to put an end to litigation and are favored by the law." (citing Stamie E. Lyttle Co. v. County of Hanover, 231 Va. 21, 26, 341 S.E.2d 174, 178 (1986)); Code § 20-109.1.

A substantial body of law has been developed explicating the principles that govern the court's jurisdiction to enter child support awards, as well as those that govern the parties' right to reach agreement on the issue. In resolving the issues in the case before us, it is important to understand how the principles that govern the court's jurisdiction to enter child support awards impact the parties' right to reach agreement on

the issue.  While the two sets of principles often intersect, on certain questions, the principles of one are independent from and unrelated to the function and dictate of the other.

Where the court's jurisdiction to set support has been invoked, either in the absence of an agreement or where the parties seek to have their agreement of child support reviewed and considered by the court in the course of its determination of a proper award, the court has been granted broad discretion to make an award.  Franklin v. Commonwealth, Dept. of Social Servs., 27 Va. App. 136, 143, 497 S.E.2d 881, 885 (1998).  However, its exercise of discretion is not unfettered, as numerous decisions of the Virginia appellate courts make manifest.

> The best interest of the child or children is the paramount and guiding principle in setting child support, whether it be adopting the presumptive amount, calculating an alternate sum after the presumptive amount has been rebutted, ordering the amount agreed upon between the parents, or approving, ratifying and incorporating, in whole or in part, the child support provisions of a contract.

Watkinson v. Henley, 13 Va. App. 151, 158-59, 409 S.E.2d 470, 474 (1991).

In addition, the trial court must base an award for child support on contemporaneous events.  Keyser v. Keyser, 2 Va. App. 459, 345 S.E.2d 12 (1986).  It may not award support prospectively, Solomond v. Ball, 22 Va. App. 385, 470 S.E.2d 157

(1996), including upon the emancipation of one of many children. See Johnson v. Johnson, 1 Va. App. 330, 333, 338 S.E.2d 353, 355 (1986) (where trial court awarded unitary support to children, in order to reduce payments to the remaining children upon the emancipation of the oldest child, the husband must "apply to the court for a modification of the decree upon a change of condition"). It may not modify an award retroactively. Code § 20-108; Bennett v. Commonwealth, 22 Va. App. 684, 696, 472 S.E.2d 668, 674 (1996) (citing Cofer v. Cofer, 205 Va. 834, 838-39, 140 S.E.2d 663, 666-67 (1965)).

A review of the relevant cases makes clear that these legal principles define the court's jurisdiction and power, and circumscribe the court's exercise of its discretion in setting child support. They do not necessarily govern the effect, scope, or validity of an agreement that the court has incorporated into its decree and upon which it has based its child support award. Indeed, the parties' well-established and broad right to reach legally binding and enforceable agreements concerning the support of their children is firmly rooted in Virginia law. A trial court may not disregard an agreement regarding child support in setting an award. Watkinson, 13 Va. App. at 158, 409 S.E.2d at 474 (holding that the trial court must consider agreed provisions in determining amount of child support). Where an agreement has been reached and either party requests incorporation, the agreement may be affirmed and

incorporated into the court's final decree and "deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree."  Code § 20-109.1; see also Morris, 216 Va. at 459, 219 S.E.2d at 866-67 ("The purpose of [Code § 20-109.1] is to facilitate enforcement of the terms of an incorporated agreement by the contempt power of the court.").  Where the court adopts the parties' agreement by incorporating it into its decree, it is enforceable, to the word, as any other term of the decree.  Fry v. Schwarting, 4 Va. App. 173, 179, 355 S.E.2d 342, 345 (1987).

Our cases applying Code § 20-109.1 place only three limitations upon the parties' right to contract regarding child support.  First, the court must review the provisions of the agreement for their consistency with the best interests of the child or children whose welfare the agreement addresses.[4]  See id.; Watkinson, 13 Va. App. at 157, 409 S.E.2d at 474.  Second, the parties may not, by agreement, prevent the court from exercising its power to change, modify, or enforce its decree concerning the custody and maintenance of minor children.  Code § 20-108; Kelley v. Kelley, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994); Featherstone v. Brooks, 220 Va. 443, 446, 258 S.E.2d

---

[4] In this case, the issue of whether the trial court properly determined that the decree's provisions regarding the future modification of support by agreement of the parties were in the best interests of the children is not before us and we, thus, do not address the question.

513, 515 (1979); Morris, 216 Va. at 461, 219 S.E.2d at 867; Watkinson, 13 Va. App. at 157, 409 S.E.2d at 473. The third limitation, emanating from the first two, prohibits the parties from terminating by contract a parent's duty to support a child. See Kelley, 248 Va. at 298, 449 S.E.2d at 56 ("parents cannot contract away their children's rights to support"); Church v. Church, 24 Va. App. 502, 508, 483 S.E.2d 498, 501 (1997) (finding decree void because it was based on agreement to terminate father's obligation to pay child support).

Neither the Virginia Code nor our case law imposes any additional restrictions on the parents' ability, in the context of divorce, to mutually determine the support of their children. Indeed, under certain circumstances, the right to reach agreement regarding support is more extensive than the court's power to decree support absent an agreement. See, e.g., Moreno v. Moreno, 24 Va. App. 227, 232, 481 S.E.2d 482, 485 (1997) (holding that where a trial court bases its child support order on the parties' agreement, it need not "determin[e] the precise presumptive amount of support," although such a determination is required absent an agreement); Spagnolo v. Spagnolo, 20 Va. App. 736, 743, 460 S.E.2d 616, 619 (1995) (noting that contracts between parents to continue support for children past the age of majority will be enforced, although the court lacks jurisdiction to order such support in the absence of such an agreement (citing Eaton v. Eaton, 215 Va. 824, 827, 213 S.E.2d 789, 792

(1975)).  No case law exists which precludes the court from incorporating within its decree any provision from the parties' agreement found to be consistent with the best interest of the child, and not void as against the public policy as enunciated in Kelley and its progeny.  See Code § 20-109.1 (providing trial court with discretion to incorporate all or some of the parties' valid agreement without enunciating any limits).  It follows that, where the court affirms, ratifies, approves and incorporates such an agreement into its divorce decree, in whole or in part, it has necessarily exercised the discretion granted to it under Code § 20-108.1 and determined that the agreement is consistent with the best interests of the child.  Blackburn v. Michael, 30 Va. App. 95, 101, 515 S.E.2d 780, 783 (1999) (trial court must determine that parties' agreement setting child support serves the best interest of the child before approving and incorporating agreement (citing Scott, 12 Va. App. 1245, 1248, 408 S.E.2d 579, 582 (1991)).

In this case, the agreement as incorporated into the divorce decree does not purport to circumvent the court's jurisdiction to enforce support, modify support, or intervene upon petition of either party.  Cf. Kelley, 248 Va. at 298, 449 S.E.2d at 56 (finding agreement void because it attempted to preclude the trial court from exercising its power to decree child support where wife agreed "never to file a petition in any court" requesting child support and stipulated that she would

reimburse husband for all sums paid to him if a court ordered him to pay such support).  Rather, either party may at any time invoke the court's jurisdiction to determine child support consistent with the best interests of that child.[5]  Nor does the agreement purport to "contract away" the children's right to support from either parent.  Id. (finding contract void because "the children's rights to receive support from both parents were substantially abridged").  Under the agreement, the minor children's rights to support remain intact and fully viable.

Furthermore, while a court may not make an award prospectively, nothing in our case law invalidates a decretal provision reflecting the parties' agreement to address and make future modifications of support as circumstances change.  See, e.g., Schmidt v. Schmidt, 6 Va. App. 501, 502, 370 S.E.2d 311, 312 (1988) (enforcing a provision of separation agreement under which child support payments decreased by $100 per month when custodial parent sold the marital residence and further decreased by $100 per month when each child graduated from high school); Tiffany v. Tiffany, 1 Va. App. 11, 332 S.E.2d 796 (1985) (upholding property settlement agreement entitling husband to reduce support payments the month preceding the date that each child turned eighteen).

---

[5] Both before and after modification of the agreed to amount of child support, included in the incorporated agreement, either party, upon a showing of a change in circumstances, could petition the court for modification of the support award.

We, therefore, conclude that neither the provisions of the agreement addressing child support, nor the decretal terms that reflect them, contravene the public policy of Virginia. See Blackburn, 30 Va. App. at 101, 515 S.E.2d at 783. Rather, the agreement in this case fosters the Commonwealth's public policy favoring the amicable resolution of child support issues. Morris, 216 Va. at 459, 219 S.E.2d at 867; Schmidt, 6 Va. App. at 503, 370 S.E.2d at 312. In such circumstances, a rule requiring parents to return to court for approval of a renegotiated amount of child support, as provided in an agreement that has been affirmed, ratified, and incorporated into an earlier decree, would undermine the Commonwealth's policy in favor of prompt resolution of disputes concerning the maintenance and care of children upon divorce. As we stated in Moreno:

> [W]e are aware of neither holding nor statute that requires a trial court to hear evidence on the matter of child support where the parties have agreed to the amount of support and do not seek the court's determination of the matter. . . . [T]he resources of both the court and the parties would be wasted by requiring a trial judge to sua sponte require parties to litigate a settled matter.

24 Va. App. at 233, 481 S.E.2d at 485-86.

In sum, we find that the parties' agreement is fully consistent with Virginia law governing the scope, effect, and validity of such agreements. Its incorporation into the final

decree of divorce necessarily rested on a finding that the provisions were consistent with the best interest of the child. See Watkinson, 13 Va. App. at 158, 409 S.E.2d at 474; Scott, 12 Va. App. at 1248, 408 S.E.2d at 582.[6]  Paragraph 5(d) of the incorporated agreement provides for a reduction in support upon the emancipation of each of the parties' minor children. Paragraph 5(e) provides that, upon a change in circumstances, such as the emancipation of a child, the parties will follow the child support guidelines and other relevant law when determining the child support then due and owing.  Because the trial court failed to enforce this provision of the decree, its finding of contempt and award of arrearages constitute reversible error. See Commonwealth v. Skeens, 18 Va. App. 154, 158, 442 S.E.2d 432, 434 (1994) ("[T]he terms of a support decree must be strictly complied with and payments made when due to the designated payee in accordance with the terms of the decree." (citations omitted)).  We, therefore, reverse the trial court's finding of contempt and its decision regarding arrearages and remand this matter to the trial court for:  (1) reconsideration of whether father, in fact, followed the provisions of the incorporated agreement when reducing the amount of support;

---

[6] The issue of whether the trial court properly determined that the decree's provisions regarding the future modification of support by agreement of the parties, both self-executing and non-self-executing, were in the best interests of the child was not raised on appeal and we, thus, do not address the question.

(2) recalculation of arrearages, if any; and (3) reconsideration of its contempt finding.

We turn finally to mother's contention that the trial court erred in giving father a credit for child-care costs because he did not request such a credit at trial. For the reasons that follow, we disagree.

A trial court is authorized to consider child-care expenses and include in a child support award an appropriate amount reflecting those costs. See Code §§ 20-108.1(B)(8), 20-108.2(F), 20-108.2(G)(3)(b). Here, the incorporated agreement required the mother to notify the father of any change in the child-care expenses incurred and permitted the father to reduce his support payment accordingly. Mother did not notify father of a decrease in child-care costs beginning in October, 1995, and father continued to pay child-care expenses. For the same reasons that we upheld the provision of the agreement of the parties for modification of support upon the emancipation of each child, we find the provision authorizing adjustments in support corresponding with changes in child-care costs valid and enforceable. Therefore, the trial court properly awarded father a credit representing father's overpayment for child-care costs not incurred by mother.

Finally, the incorporated agreement provides that:

> [A]ny costs, including but not limited to
> counsel fees, court costs, investigation
> fees and travel expenses, incurred by a

> party in the successful enforcement of any
> of the . . . provisions of this Agreement
> . . . shall be borne by the defaulting
> party.  Any such costs incurred by a party
> in the successful defense to any action for
> enforcement of any of the . . . provisions
> of this Agreement shall be borne by the
> party seeking to enforce compliance.

Because the trial court has yet to determine whether father has defaulted in his child support obligation or has successfully defended this enforcement action, we remand to the trial court for reconsideration of its award of attorney's fees in accordance with its decision and the terms of the agreement.  We also remand for consideration of an award of court costs and attorney's fees on appeal, consistent with its decision and the terms of the agreement.

<u>Affirmed in part,</u>
<u>reversed in part</u>
<u>and remanded.</u>

Agee, J., with whom Frank, J., joins, concurring.

While I generally agree with the foundational analysis of the majority's opinion and the end result in this case, I write separately to express the basis for the validity of "self-executing" child support agreements and the appropriate review of the incorporated agreement in this case.

The public policy issue arising in this case is whether a divorce decree's incorporated terms regarding child support are valid where those terms include an agreed upon change in child support payments upon the occurrence of certain future events without further action of the court. This type of provision has been termed "self-executing" although that is not a term used in the Code or referenced widely in case law.[7]

Father apparently deemed the agreement at bar to be "self-executing" and unilaterally reduced his child support payments as each child reached the age of eighteen. Both the trial court and a panel majority of this Court found these actions violative of public policy, holding that the child support payments could only be changed by court order. See Shoup v. Shoup, 34 Va. App. 347, 542 S.E.2d 9 (2001). On that basis, the panel majority also found the incorporated

---

[7] For current purposes, I will assume a self-executing child support agreement is one in which terms "effective immediately without the need of any type of implementing action" are used. See Black's Law Dictionary 1364 (7th ed. 1999); see also Schmidt v. Schmidt, 6 Va. App. 501, 506, 370 S.E.2d 311, 314 (1988).

self-adjustment provision for periodic fluctuations in child-care expense payments to be invalid, although the trial court did not.  However, upon rehearing en banc, the members of this Court, with whom I join, give effect to "self-executing" child support agreements.

Clearly, Code § 20-109.1 provides that parties can agree to the terms of child support within a custody and property settlement agreement and submit that agreement to the court. See Richardson v. Richardson, 10 Va. App. 391, 392 S.E.2d 688 (1990).  The child support terms become the terms of the court's decree if the court affirms, ratifies and incorporates those into its decree.  "Code § 20-109.1 provides that a court may affirm, ratify and incorporate by reference in its decree any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties . . . and the care, custody and maintenance of their minor children."  Rodriquez v. Rodriquez, 1 Va. App. 87, 90, 334 S.E.2d 595, 596 (1985).  "Where the court does . . . incorporate the agreement or provisions thereof, it shall be deemed for all purposes to be a term of the decree and enforceable as such . . . by the contempt power of the court."  Id. at 90, 334 S.E.2d at 597 (citation omitted).  The plain meaning of Code § 20-109.1 is, therefore, the basis upon which the validity of self-executing child support agreements rests.

> "When the legislature has spoken plainly
> courts may not change or amend legislative
> enactments under the guise of construing
> them.  The province of construction lies
> wholly within the domain of ambiguity.
> . . . That which is plain needs no
> interpretation.  Winston v. City of
> Richmond, 196 Va. 403, 407-08, 83 S.E.2d
> 728, 731 (1954)."

Armstrong v. Commonwealth, 36 Va. App. 312, 320, 549 S.E.2d 641, 645 (2001) (quoting Jones v. Commonwealth, 16 Va. App. 354, 358, 429 S.E.2d 615, 617 (1993)).

A child support agreement presented to a court under Code § 20-109.1 is not, however, entitled to the same mandatory recognition by the court as is an agreement for spousal support under Code § 20-109(C).  The court must make a determination that the terms of a child support agreement (which become terms of the decree) are in the best interests of the child.[8]  Code § 20-108.1(B); see also Blackburn v. Michael, 30 Va. App. 95, 515 S.E.2d 780 (1999); Watkinson v. Henley, 13 Va. App. 151, 409 S.E.2d 470 (1991).

Thus, a court may incorporate the parties' agreement as to child support into its decree, and the terms will be enforceable

---

[8] The best interest of the child or children is the paramount and guiding principle in setting child support, whether it be adopting the presumptive amount, calculating an alternative sum after the presumptive amount has been rebutted, ordering the amount agreed upon between the parents, or approving, ratifying and incorporating, in whole or in part, the child support provisions of a contract.  See Watkinson v. Henley, 13 Va. App. 151, 153, 409 S.E.2d 470, 471 (1991).

upon an initial finding that the agreement is in the child's best interest. This is true even when the terms provide for future changes in child support, without further court action, provided (1) the court approves of the future changes when it incorporates the terms into its decree and (2) the court's continuing authority under Code § 20-108 to revise and alter child support in the future is not limited. See generally Kelley v. Kelley, 248 Va. 295, 449 S.E.2d 55 (1994); Schmidt v. Schmidt, 6 Va. App. 501, 370 S.E.2d 311 (1988); Tiffany v. Tiffany, 1 Va. App. 11, 332 S.E.2d 796 (1985).

A court's ratification of an incorporated agreement's child support terms carries the express or implied imprimatur that the court has found those terms in the best interest of the children. See generally Scott v. Scott, 12 Va. App. 1245, 408 S.E.2d 579 (1991). As the en banc majority correctly concludes, such a finding that the agreed child support is in the children's best interests can be made under a "self-executing" agreement, one which modifies the amount of child support at a future date upon the occurrence of a modification event. Such an adjustment may occur without additional court approval of the modification at the time the modification is implemented. See Schmidt, 6 Va. App. 501, 370 S.E.2d 311; Tiffany, 1 Va. App. 11, 332 S.E.2d 796.

In the context of a "self-executing" child support award, like any other award of child support, a court must first

determine that the future adjustments are in the child(ren)'s best interests.  Such a determination requires that both the event(s) triggering adjustment, and the terms of adjustment, are clear and definitive.  See id.  It should be self-evident that a court cannot determine that a future self-executing adjustment to child support is in a child's best interests if the triggering events or the terms of adjustment cannot be determined.

Accordingly, I concur with the majority, in reasoning and result, to affirm the trial court's decision to credit father for the adjustments in child-care expense payments.  No further court intervention is required for the parties to adjust the child-care expense reimbursement, which is based on clear and definitive modification terms (actual expenditures divided on a pro rata share of verified annual incomes).  While this adjustment provision is plainly self-executing, the salient reason it meets muster is that a court does not employ guesswork to decide if this method of future adjustment is in the best interests of the children when entering the decree, which incorporates the agreement.

The same judgment, however, cannot be given on future changes in child support payments under the Shoup decree and incorporated agreement.  Although the majority reads the decree to provide "for a reduction in support upon the emancipation of the parties' minor children," I do not find definitive direction

in the decree and its incorporated agreement as to how a revised amount is to be calculated "immediately without the need of any implementing action."

While the decree provides "[father] is ordered to pay [mother] child support in accordance with all the terms, provisions and requirements of their June 27, 1994 Custody, Support and Property Settlement Agreement," it then specifically fixes child support:

> [Father] shall pay the amount of $2,177.00 per month, as and for child support, to [mother]. Child support shall continue until a minor child dies, marries, becomes emancipated, or reaches the age of eighteen years, whichever occurs first, or until further order of the court[.]

(Emphasis added.) Neither the decree nor the incorporated agreement definitively establishes the adjustment to the initial child support amount as each child turns eighteen years of age. However, the decree is clear that the initial set amount of $2,177 is in effect only until the first child reaches the age of eighteen unless there is a prior order changing it. There was none.

There are no specific adjustment terms in the decree and its incorporated agreement directing a self-executing adjustment to the child support amount. Instead, one must intuit that the reference in the decree to pay child support "in accordance with all the terms . . . of their . . . property settlement agreement" is an enforceable link to some part of that

agreement.  Father posits that link to this portion of the

agreement:

> [5]e.  If there is any change in
> circumstances, the parties shall follow the
> child support guidelines contained in
> § 20-108.2 of the Code of Virginia or its
> successor statute <u>and any other relevant
> Virginia statutes and case law for
> determination of child support</u>.

(Emphasis added.)

The agreement does not provide that the child support

guidelines then in effect fix the terms of modification, but

instead requires the parties to follow the guidelines plus

"other relevant Virginia statutes and case law for determination

of child support."  Under the language of the incorporated

agreement, further judicial intervention would be required to

definitely determine how other "relevant Virginia statutes and

case law" would alter the guideline amount.  Clearly, such a

provision is not "self-executing," as it is not "effective

immediately without the need of implementing action."

More importantly, a court asked to incorporate such a

provision could not determine, on the date it entered its decree

incorporating the agreement, what the future child support terms

would be upon one of the Shoup children attaining age eighteen.

Thus, no finding could be made that such unknown terms were in

the best interests of the remaining unemancipated children.[9]  If

---

[9] Had the agreement referenced a definitive standard, such
as a specific monetary amount or simply the guidelines in effect

the child(ren)'s best interests cannot be ascertained, then the portion of the decree setting out an unknown future child support adjustment would not be susceptible to self-adjustment by the parties without further action of the court.

The plain terms of the decree required the monthly payment of $2,177 <u>until</u> a child attained the age of eighteen. The decree is silent as to what amount then would be due. It is clear, though, that the decree does not set $2,177 as the amount of continuing monthly child support due from father for the remaining unemancipated children.

Upon a Shoup child reaching age eighteen, the decree and incorporated agreement are manifestly <u>not</u> self-executing.[10] In plain terms, neither party knew what the appropriate amount of child support for the remaining unemancipated child(ren) was to be under § 5(e) of the agreement.

However, the trial court determined an arrearage, and found father in contempt, based on the $2,177 monthly amount, but without any finding as to what child support amount was in the best interests of the remaining unemancipated children and

---

at the child's eighteenth birthday, the court would have definitive terms upon which to make a finding of the best interests of the remaining unemancipated children as to the future adjustment.

[10] While § 5(e) of the incorporated agreement is not self-executing, that does not affect its validity or enforceability when the court determines any child support adjustment.

required by the decree and incorporated agreement. Clearly, that decision of the trial court was erroneous. Father's duties as to child support were then not definite and he could not, therefore, be found in contempt.

> As a general rule, "before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied."

Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977) (citation omitted).

Accordingly, I concur in the result reached by the majority to reverse the trial court's finding of contempt as to father and to remand the issue of any child support arrearage to the trial court for a determination of the appropriate child support amount. To do so, the trial court needs to determine the child support guidelines in effect as each child attained age eighteen and how "other relevant Virginia statutes and case law" affects, if at all, the appropriate child support amount for the remaining unemancipated child(ren). Only after such a determination is made can it be further determined if an arrearage or overage exists as finally adjusted for the child-care expenses. In view of the necessity to remand to the trial court, I would also reverse the trial court's award of attorney's fees and remand to the trial court for reconsideration on that issue as well. Whether any attorney's

fees are due, and to and from whom under the terms of the agreement, is dependent on the ultimate determination as to the child support payment arrearage or overage, if any.