COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Kelsey and Alston
Argued at Alexandria, Virginia


RORY LUTHER VIROSTKO

                                                              OPINION BY
v.        Record No. 1546-11-4                    JUDGE ROSSIE D. ALSTON, JR.
                                                           MARCH 20, 2012
BRANDI LYNN VIROSTKO


              FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                              Lisa B. Kemler, Judge

              Heather N. Jenquine (Grenadier, Anderson, Starace, Duffett &
              Keisler, P.C., on brief), for appellant.

              Daniel G. Dannenbaum (Dannenbaum Law Firm, LLC, on brief),
              for appellee.


       Rory Virostko ("father") appeals the trial court's determination that he owes $39,000 in

child support arrearages.  Father contends that the trial court erred in two respects.  First, father

argues that the trial court disregarded the terms of the parties' Separation and Property

Settlement Agreement ("PSA") in both determining the child support owed by father to Brandi

Virostko ("mother") and the prescribed methodology by which child support was to be

calculated.  Additionally, father asserts that the trial court erred in its determination that he owed

$2,300 per month in child support from October 2009 through the date of the hearing.  For the

following reasons, we find no error in the trial court's decision and affirm the judgment.

                          I. FACTS AND PROCEEDINGS BELOW

       On appeal, we view the facts, and all reasonable inferences from those facts, in the light

most favorable to the party prevailing below, mother, in this case.  See Congdon v. Congdon, 40

Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  Viewed from this analytical perspective, the

evidence indicated that the parties married on May 20, 2005, and mother gave birth to their only

child later that year. The parties separated in November 2007.

On July 22, 2009, the parties entered into a PSA. At the time the parties entered into the

PSA, father was working in Iraq for Triple Canopy, a defense contractor. The PSA's provision

on child support stated:

> It is agreed by the parties that [father] shall pay support for the
> parties' child, in the amount of two thousand three hundred dollars
> ($2,300.00) per month, until the end of [father's] deployment
> contract with Triple Canopy or any other contracting company
> with which he is employed. After the termination of [father's]
> contract, [father] agrees to pay a percentage of his income that is
> agreed upon by him and [mother], or the parties will let a court of
> competent jurisdiction decide the percentage to be paid in child
> support. [Father] shall pay child support until the child reaches 18
> years of age, subject to the provisions listed below. Payments shall
> be made directly to [mother], on the first day of each month,
> beginning [2/1/09].
>
> The parties further acknowledge and agree that pursuant to [Code]
> § 20-124.2(C) . . . support shall continue to be paid for the parties'
> minor child if the child is a (i) full-time high school student,
> (ii) not self-supporting and (iii) living in the home of the party
> seeking or receiving child support, until the child reaches the age
> of nineteen or graduates from high school, whichever first occurs.

The parties were divorced by an October 2, 2009 final decree which affirmed, ratified, and

incorporated the PSA.

Between October 1 and October 4, 2009, father and mother exchanged emails about

father's decision to leave his position with Triple Canopy in Iraq. During this exchange father

also proposed reduced child support payments for the coming months from the $2,300 the parties

agreed to in the PSA. Father returned from Iraq in November 2009 without employment and

remained unemployed until he obtained a position with Mymic in April 2010.

On June 15, 2010, mother filed a combined motion (the "combined motion") to enforce

the PSA, seeking a determination of child support owed, and also seeking to clarify the custody

schedule. In the combined motion, mother asked the trial court to order father to pay support pursuant to the PSA from November 1, 2009, to the date of the hearing; to determine the amount of child support father should pay, retroactive to the filing of the motion; and to order father to pay interest on the overdue amounts. Father filed a response in which he stated that the parties had reached an agreement for reduced child support payments in the amount of $200 per month while father was unemployed and $550 per month based on father's employment with Mymic. Father asked the trial court to uphold this "agreement" of $550 per month for child support.

In early March 2011, mother voluntarily withdrew her combined motion and filed an Affidavit and Petition for a Rule to Show Cause, asking the trial court to order father to show cause why he should not be held in contempt of court for his failure to pay $32,600 in unpaid child support (representing payments of $2,300 per month from October 2009 to the filing date). In her petition, mother stated that father "unilaterally, without my consent, and without the Court's approval, reduced the amount of child support he was obligated to pay." Mother also listed the child support payments she received from father between November 2009 and March 2011. Mother claimed that she received no support in November and December 2009; $200 per month from January through May 2010; and $550 per month from June 2010 through March 2011. Father filed a response disputing mother's claim that he paid no child support in November and December 2009 and maintained that the parties had agreed to the reduction in child support payments based on the terms of their PSA. Father asked the trial court to dismiss the rule to show cause, to establish the proper amount of child support pursuant to the PSA, and to establish a payment schedule if arrearages were determined.

On June 8, 2011, the trial court held an evidentiary hearing on the rule to show cause and took the matter under advisement. At the hearing, father testified to the following child support payments: $2,300 in October 2009; $1,800 in November 2009; $1,500 in December 2009; and

$200 per month from January 2010 to May 2010. In contrast, mother testified that she did not receive any child support payments in January, February or March 2010 and that she received $200 per month for child support in April and May 2010. Mother further testified that she never agreed to receive child support at a rate of $550 per month in June 2010, as father proposed.

At the conclusion of the hearing the trial court took the matter under advisement and later issued its ruling in the form of an opinion letter. In the opinion letter, the trial court concluded that parties can modify child support agreements without court approval only when the relevant provision is both incorporated into a final decree and "self-executing" in nature: meaning that the provision contains the terms and methodology of recalculating the child support payment. Applying that principle to the case at bar, the trial court held that the support clause at issue was not self-executing because it did not provide an objective methodology for recalculating support following the termination of father's contract. From this analytical perspective, the trial court held that under the circumstances in this case, an agreement to modify the monthly amount of child support would not be valid without court approval, particularly because mother did not concede that she entered into any such agreement.

The trial court further found that because it lacked authority to retroactively modify past due child support payments, father owed mother the full $2,300 per month payment from October 2009 through the hearing date. As to whether father actually paid mother any child support in October, November, and December 2009, the trial court found that father presented no evidence supporting his claim that he had paid mother certain amounts in cash for those months. Without that evidence, the trial court found that it lacked a sufficient basis upon which to conclude that father made any payments. Accordingly, the trial court calculated father's arrearages from October 2009 to the date of the hearing, credited him with the payments he

provided supporting evidence for, and ordered him to pay mother $39,000 in child support arrearages.

Father filed a motion to reconsider, emphasizing the authority of parents to enter into agreements governing support of their children and asserting that the parties in the present case had fully complied with the limitations placed on such agreements. After mother filed her response, the trial court denied father's motion for reconsideration. In disposing of the motion for reconsideration, the trial court indicated that it found the case father primarily relied on, Shoup v. Shoup, 37 Va. App. 240, 556 S.E.2d 783 (2001), to be distinguishable and found the decision mother cited, Riggins v. O'Brien, 263 Va. 444, 559 S.E.2d 673 (2002), to be controlling. Specifically, the trial court stated:

> Here, unlike in Shoupe [sic], the parties' PSA does not provide a self-executing method for determining how a modification of the child support amount would be calculated. As in Riggins, the PSA here merely provided that the parties agreed to renegotiate the amount of child support upon the occurrence of a specific event or submit the matter to the Court for determination.

Father then noted this appeal.

## II. ANALYSIS

Father makes three distinct arguments under his two assignments of error, and we will address each one in turn.[1]

### A. Trial court's interpretation of the parties' PSA

Father first contends that the trial court misapplied the law in its interpretation of the child support provision of the parties' PSA. "[A] trial court's interpretation of [a marital

---

[1] At the outset we note that both parties and the trial court assumed that the modification provision was triggered prior to the evidentiary hearing on the rule to show cause, which led to the decision on review. Therefore, for purposes of our review, we assume without deciding that the condition precedent to the modification provision taking effect occurred regardless of whether father voluntarily left his position with Triple Canopy.

- 5 -

agreement] is an issue of law that we review *de novo*." Stacy v. Stacy, 53 Va. App. 38, 43, 669

S.E.2d 348, 350 (2008) (*en banc*). Code § 20-109.1 states:

> Any court may affirm, ratify and incorporate by reference
> in its decree dissolving a marriage or decree of divorce . . . any
> valid agreement between the parties, or provisions thereof,
> concerning . . . custody and maintenance of their minor children
> . . . . Provisions in such agreements for the modification of child
> support shall be valid and enforceable. Unless otherwise provided
> for in such agreement or decree incorporating such agreement,
> such future modifications shall not require a subsequent court
> decree.

To be legitimately incorporated into a final decree under Code § 20-109.1 and consistent with the

Commonwealth's public policy, a child support provision in a PSA must satisfy three limitations.

Shoup, 37 Va. App. at 250, 556 S.E.2d at 788. Prior to approving the agreement's incorporation,

the court must review the child support provisions for consistency with the child or children's

best interests. Id. Additionally, the parties' agreement may not "prevent the court from

exercising its power to change, modify or enforce its decree concerning" child support. Id.

Finally, the parties may not use the agreement to terminate a parent's duty to support his or her

child. Id. at 250-51, 556 S.E.2d at 788.

Father interprets the parties' modification provision[2] to entirely eliminate his obligation

to support his child upon the termination of his contract with Triple Canopy until the parties

---

[2] The child support provision in the parties' PSA states in pertinent part:

> It is agreed by the parties that [father] shall pay support for the
> parties' child, in the amount of two thousand three hundred dollars
> ($2,300.00) per month, until the end of [father's] deployment
> contract with Triple Canopy or any other contracting company
> with which he is employed. After the termination of [father's]
> contract, [father] agrees to pay a percentage of his income that is
> agreed upon by him and [mother], or the parties will let a court of
> competent jurisdiction decide the percentage to be paid in child
> support. [Father] shall pay child support until the child reaches 18
> years of age, subject to the provisions listed below.

agreed on a new payment or a court decided on a new amount. Father's asserted interpretation of that provision, however, would result in a violation of Shoup's mandate. In its disposition, the trial court rejected this interpretation in implicitly finding that the modification provision was valid on its face. We agree because, *inter alia,* Shoup renders unenforceable a provision in a PSA that eliminates a party's duty to support his child. Id. at 251, 556 S.E.2d at 788. Therefore, the trial court was correct in rejecting father's proposed interpretation of the modification provision.

Having concluded that the modification provision is valid, we next determine whether the trial court properly found that the provision was not self-executing. We begin by acknowledging that Code § 20-109.1 allows parties to contract for future modifications without returning to the trial court for approval in certain cases. But, the ability to do so depends on the language of the modification provision. If the modification provision is self-executing – meaning that it refers to objective standards for calculating support, such as the Child Support Guidelines or a stated formula – the parties need not obtain court approval for the modification to legally take effect. If the provision is not self-executing, the contrary is required; the parties must return to court to obtain approval of the modification. This distinction comports with the public policy of the Commonwealth recognizing that a trial court's review "is necessary to ensure that the child's welfare is adequately addressed and protected given the circumstances of the parents." Riggins, 263 Va. at 448, 559 S.E.2d at 675. With this conclusion we by no means undermine the long-settled principle that a trial court retains jurisdiction over child support modifications despite any agreement among the parents. See Schmidt v. Schmidt, 6 Va. App. 501, 503, 370 S.E.2d 311, 312 (1988). As has been consistently stressed by related authority, the right to support is a right that belongs to *the child*, not to either parent. See id. (citing Kelley v. Kelley,

248 Va. 295, 298, 449 S.E.2d 55, 56 (1994); <u>Featherstone v. Brooks</u>, 220 Va. 443, 448, 258 S.E.2d 513, 516 (1979)).

Applying this distinction to the case at bar, the parties' modification provision states that the parties will either agree upon a new amount based on father's income; or, assuming they cannot agree, they will return to court and let the court decide based on the circumstances at that time. This provision points to no objective standards by which the parties could determine a new amount of child support. Essentially, it is merely an agreement to agree or return to court if no agreement can be reached. Therefore, it is not self-executing. Accordingly, we affirm the trial court's interpretation of the PSA's modification provision and its conclusion that the provision is not self-executing.

### B. Trial court's determination that father is in arrears

Father also argues that the trial court erred in finding that he was in arrears because mother accepted his offer for lower monthly child support payments upon his return from Iraq. On review of a factual determination by the trial court, we view the facts, and all reasonable inferences from those facts, in the light most favorable to the party prevailing below. <u>Congdon</u>, 40 Va. App. at 258, 578 S.E.2d at 835. We will not disturb the trial court's factual findings on appeal unless they are plainly wrong or without supporting evidence. <u>Robinson v. Robinson</u>, 46 Va. App. 652, 661, 621 S.E.2d 147, 151 (2005) (*en banc*).

The trial court's letter opinion stated that mother never conceded that she agreed to a modification of the monthly child support payment. Because father filed a written statement of facts in lieu of a transcript, our review is limited to that statement and the exhibits that the parties filed. The written statement of facts indicates that although mother may have agreed to lesser child support payments for October, November, and December 2009, she testified that she never received these payments. The trial court credited her testimony over father's on this issue, and

- 8 -

we defer, as always, to the trial court's credibility determinations. See Shortridge v. Deel, 224 Va. 589, 592, 299 S.E.2d 500, 502 (1983). The written statement of facts also demonstrates that mother testified that she did not agree to receive $550 per month for child support, which father proposed beginning in June 2010. Because the trial court based its decision about the alleged agreement on the foregoing evidence, we find that father has failed to demonstrate that the trial court's decision was plainly wrong or lacking supporting evidence.

Assuming *arguendo* we were to disagree with the trial court and conclude that the parties agreed to a new amount of child support, we could not uphold that agreement because the parties did not obtain court approval for it. See Riggins, 263 Va. at 449, 559 S.E.2d at 676 ("[B]ecause the parties did not obtain court approval of their renegotiations, [father] is obligated to pay the arrearages and interest as determined by the trial court."). Moreover, putting aside the distinction between self-executing and non-self-executing provisions, we have consistently held:

> [A] former spouse must make payments according to the court's decree; a spouse's delay in pursuing enforcement, or acquiescence by accepting a lesser amount than the court award, or an agreement to accept a lesser sum than the award, will not relieve the obligor nor will it prevent accumulation of an arrearage.

Schmidt, 6 Va. App. at 504, 370 S.E.2d at 313 (citing Richardson v. Moore, 217 Va. 422, 229 S.E.2d 864 (1976)). Therefore, the trial court did not err in determining that father was in arrears on his child support payments.

### C. Retroactivity date and arrearage calculation

In his challenge to the amount of the arrearage award, father asserts that the trial court should have considered his response to mother's combined motion as a petition for modification, thereby making the arrearages retroactive to the date he filed the responsive brief, July 1, 2010, instead of the first month of noncompliant payments, October 2009.

Rule 5A:18 states: "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Father does not refer to the written statement of facts or anywhere else in the record indicating when he raised this issue before the trial court. We decline to address this argument because this Court does not consider arguments raised for the first time on appeal. West v. West, 53 Va. App. 125, 131, 669 S.E.2d 390, 393 (2008) (citing Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998)).

Because a trial court has no authority to retroactively modify child support other than to the filing date of a petition to modify, Code § 20-108, we affirm the trial court's calculation of arrearages commencing with the first month of noncompliant payments, October 2009. See Goodpasture v. Goodpasture, 7 Va. App. 55, 58, 371 S.E.2d 845, 847 (1988) ("Past due support installments become vested as they accrue and are thereafter immune from change." (citing Cofer v. Cofer, 205 Va. 834, 839, 140 S.E.2d 663, 666-67 (1965))).

## IV.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.