**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 21-1279**

─────────────

SERGE MATTHEW ALUKER,

               Petitioner - Appellant,

     v.

SIMIN YAN, a/k/a Simin Aluker,

               Respondent - Appellee.

─────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Liam O'Grady, Senior District Judge.  (1:20−cv−01117−LO−IDD)

─────────────

Submitted:  June 25, 2021                             Decided:  August 5, 2021

─────────────

Before MOTZ, KEENAN, and HARRIS, Circuit Judges.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

Stephen J. Cullen, Kelly A. Powers, MILES & STOCKBRIDGE P.C., Washington, D.C., for Appellant.  Maya Eckstein, Richmond, Virginia, Kelly R. Oeltjenbruns, HUNTON ANDREWS KURTH LLP, Washington, D.C., for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this appeal, we consider whether the district court erred in concluding that Serge Aluker, the father of two minor children, did not have custody rights recognized by the Hague Convention and, therefore, failed to prove that the children's mother, Simin Yan, wrongfully removed the children from Portugal to the United States. For the reasons stated below, we affirm the district court's judgment.

## I.

Aluker is a United States citizen, a Russian citizen, and a legal resident of Portugal. Yan is a United States citizen who presently resides in Virginia. In 2006, Aluker and Yan were married in China, and they moved to the United States in 2008. While living in the United States, Aluker and Yan had two children. The family moved to Spain in 2015, and to Portugal in 2017.

Shortly after their move to Portugal, Aluker and Yan separated. Initially, they shared parental responsibilities. However, in November 2018, Aluker and Yan executed a Separation and Property Settlement Agreement (PSA), which stated in relevant part:

> The parties desire to settle and determine their mutual obligations and all of their property rights, as well as the maintenance and support of each of the parties, by the other, and all rights, claims, relationships or obligations between them arising out of their marriage or otherwise.
> . . .
> In full and final settlement of the matters at issue between them, and in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:
>  . . .

[Yan] shall have sole legal and primary physical custody of [the two children]. [Aluker] shall be entitled liberal and reasonable visitation with the children.

. . .

The parties acknowledge that this Agreement is a full and final settlement that contains the entire understanding of the parties, and there are no representations, warranties, covenants, or undertakings other than those expressly set forth herein.

. . .

This Agreement shall be construed in accordance with the law of the Commonwealth of Virginia.

Aluker also agreed in the PSA that Yan would have sole ownership of their house in Falls Church, Virginia. The parties further stipulated therein that each had "the right to reside at any place . . . without the consent of the other party." The PSA was not incorporated into any court order.

Several months after the PSA was executed, Aluker initiated proceedings in May 2019 in a Portuguese court seeking an adjudication of child custody rights. The Portuguese court had not taken any action when, on October 3, 2019, Yan sent Aluker an e-mail stating that she was taking the children to the United States to live. Yan and the children traveled to the United States on the same day.

Almost a year later, in September 2020, Aluker filed a petition in the district court under the Hague Convention. In his "verified petition of return of children to Portugal," Aluker contended that the children were wrongfully removed from Portugal. On the day of a scheduled bench trial, Yan requested a judgment on partial findings under Federal Rule of Civil Procedure 52(c). The court conducted a brief evidentiary hearing, allowed Aluker to file a response memorandum, and later granted Yan's motion. The court concluded that the PSA was a valid agreement, which established that Yan had legal custody of the

3

children at the time she removed the children from Portugal. Accordingly, the court held that Yan's status as legal custodian of the children defeated Aluker's claim of wrongful removal. Aluker appeals.

## II.

In cases involving claims brought under the Hague Convention, we review a district court's findings of fact for clear error and its conclusions of law de novo. *Bader v. Kramer*, 484 F.3d 666, 669 (4th Cir. 2007). Our determination is limited to the merits of the wrongful removal claim, without consideration of any underlying custody dispute. *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001).

The Hague Convention was adopted to help "secure the prompt return of children wrongfully removed to or retained in any Contracting State." Convention on Civil Aspects of International Child Abduction ("Hague Convention") art. 1, Oct. 25, 1980, T.I.A.S. No. 11,670, 19 I.L.M. 1501. Article 3 of the Hague Convention provides:

> The removal or the retention of a child is to be considered wrongful where . . . it is in breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident immediately before the removal or retention . . .
>
> The rights of custody mentioned . . . above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Hague Convention, art. 3. To establish a claim of wrongful removal under the Hague Convention, a petitioner must show that: (1) the children habitually resided in "the petitioner's country of residence at the time of removal;" (2) the removal breached "the

4

petitioner's custody rights under the law of his home state;" and (3) the petitioner was actually exercising his custody rights at the time of removal. *Bader*, 484 F.3d at 668; *see also* Hague Convention, art. 3.

Aluker argues on appeal that the children were habitual residents of Portugal at the time of their removal and that, under Portuguese law, he maintains rights of custody recognized by the Hague Convention. He also contends that the PSA lacks any "legal effect" under the Hague Convention and that, therefore, Yan cannot rely on the PSA to defeat his wrongful removal claim. We disagree with Aluker's position.

Irrespective whether the children were habitual residents of Portugal at the time of their removal, Aluker's wrongful removal claim fails because he did not establish the other two requirements for proving his claim, namely, that when the children were taken to the United States, he had custody rights under Portuguese law and he was actually exercising those rights. *See Bader*, 484 F.3d at 668; Hague Convention, art. 3. At the time the children were removed from Portugal, no court had awarded custody rights to Aluker, and the parties had not entered into any written agreement providing Aluker with such rights. When the children were removed from Portugal, Yan had sole legal custody of the children, as agreed by the parties in the PSA.

Contrary to Aluker's assertion, Portuguese choice of law rules require that we apply United States law in this case. Article 57 of the Portuguese Civil Code directs that "[r]elationships between parents and children are regulated by the common national law of the parents, and in the lack thereof, by the law of their common habitual residence; if the parents habitually reside in different countries, the law of the child's country of origin shall

apply." In applying Portugal's choice of law provision to this case, the "common national law of the parents" is the United States, because both Aluker and Yan are United States citizens. Accordingly, United States law, here, the law of Virginia, applies to resolve this matter.

Aluker has failed to prove under Virginia law that he had any custody rights at the time the children were removed from Portugal. As noted above, the PSA unambiguously provided that Yan "shall have sole legal and primary physical custody" of the two children. Although Virginia courts have the power to modify any private custody agreement that parents execute, parents still may enter into such custody agreements and courts may rely on them in making custody determinations. *See Shoup v. Shoup*, 556 S.E.2d 783, 787-89 (Va. Ct. App. 2001) ("Divorcing parents may and, indeed, are encouraged under Virginia public policy, to reach agreement respecting the care and support of their minor children."); Va. Code Ann. § 20-109.1 ("Any court may affirm . . . any valid agreement between the parties . . . concerning the . . . care, custody and maintenance of their minor children."). At the time the children were removed from Portugal, no court had altered the terms of the PSA or had adjudicated the issue of the children's custody.

The terms of the Hague Convention also support the district court's conclusion that the PSA was a valid agreement addressing custody rights. Under the Hague Convention, custody rights can be determined by "an agreement having legal effect under the law of the [state of the child's habitual residence]." Hague Convention, art. 3. An agreement having "legal effect" under the Hague Convention can include "simple private transactions between the parties concerning the custody of their children." Elisa Pérez-Vera,

6

Explanatory Report on the 1980 HCCH Child Abduction Convention, in 3 Actes et Documents de la Quatorziéme Session – Child Abduction, at 426, 447, ¶ 70 (1980). Accordingly, we conclude that the district court did not err in holding that the PSA had "legal effect" within the meaning of the Hague Convention, and that Aluker failed to prove his claim of wrongful removal.[*]

III.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*

---

[*] We reject Aluker's assertion that he was not "fully heard" in accordance with Rule 52(c), because the court did not receive testimonial evidence from Aluker's expert witness on Portuguese law. In considering the legal issue regarding the effect of Portuguese law on the parties' custody rights, the district court received two affidavits from Aluker's expert witness and one from Yan's expert witness on this topic. Rule 52(c) did not require an evidentiary hearing on this legal issue. Accordingly, we conclude that Aluker was "fully heard" on the dispositive issues before the district court.