COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judge Humphreys and Senior Judge Annunziata
Argued by teleconference

UNPUBLISHED

GUY R. JOUBERT

v.       Record No. 1102-19-4

COURTNEY R. HERBERT

MEMORANDUM OPINION* BY
CHIEF JUDGE MARLA GRAFF DECKER
SEPTEMBER 1, 2020

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Grace Burke Carroll, Judge

Lawrence D. Diehl (Barnes & Diehl, P.C., on brief[1]), for appellant.

Scott A. Surovell (Lily A. Saffer; Surovell Isaacs & Levy PLC, on brief), for appellee.


Guy R. Joubert (the father) appeals a 2019 circuit court order impacting child custody and other issues following his divorce from Courtney R. Herbert (the mother). He asserts that the order improperly nullifies numerous provisions of an agreement between the parties that was incorporated into an earlier circuit court order. He also suggests that the 2019 order improperly grants the mother final decision-making authority for the parties' children over certain matters. Lastly, each party seeks an award of attorney's fees on appeal.

We hold that the circuit court erred by vacating some of the provisions of the agreement incorporated into the prior court order. However, we conclude based on the court's continuing jurisdiction over child custody matters that it had authority to vacate the challenged provisions relating to parenting decisions and to give the mother decision-making authority over most issues.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The appellant filed a late reply brief, which we do not consider in this appeal.

Regarding the attorney's fees provisions of the parties' agreement, we hold that the court erred to the extent that it modified these provisions and concluded that it had authority despite the parties' agreement to award fees for the litigation of child-related matters. Nevertheless, we conclude that the agreement did not bar the circuit court's award of attorney's fees to the mother. We further hold that the order, construed narrowly, did not give the mother decision-making authority over certain challenged activities during the father's visitation time. Finally, we deny the parties' competing requests for attorney's fees on appeal. Consequently, we affirm in part, reverse in part, and remand for additional proceedings consistent with this opinion.

## I. BACKGROUND[2]

The parties were married in 2007. They had two children, who were born in 2008 and 2012. The parties separated in 2015. The mother is a physician, and the father operates a company that provides litigation support services. Each earns a six- or seven-figure annual income, with the father earning substantially more than the mother.

On April 20, 2016, the parties entered into a custody settlement agreement (the CSA or the agreement). The stated purpose of the CSA was to set out "the terms which [the parties] have agreed upon regarding child custody and visitation." However, it also covered a few property distribution issues, a payment for attorney's fees previously incurred, and a provision for attorney's fees in the event of a breach of the CSA. The CSA described its terms as temporary but simultaneously provided that it was to be incorporated but not merged into any

---

[2] Both the record and the briefs in this matter have been sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record for purposes of resolving the issues raised. Therefore, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017). Additionally, although this appeal centers on legal issues, we view the facts underlying those issues in the light most favorable to the mother, the party who prevailed on the challenged issues in the circuit court. See D'Ambrosio v. D'Ambrosio, 45 Va. App. 323, 335 (2005).

court order pursuant to Code § 20-109.1 and would be "forever . . . binding" unless modified in writing.

The circuit court thereafter entered various orders addressing different aspects of the dissolution of the parties' marriage. As relevant here, the court incorporated the CSA into an order entered July 28, 2016 (the 2016 order), "except to the extent" that the CSA was "expressly superseded by or . . . inconsistent with" specified portions of the order. The 2016 order reflected modifications of the CSA, to which the parties stipulated, regarding the use of a parenting coordinator and the selection of schools for the children.[3]

The court then entered two additional orders, one granting the requested divorce and the other providing for equitable distribution. The equitable distribution order included an interim award of child support. The court declined to award either party any additional attorney's fees.

The parties later reached an agreement regarding child care and support, and on June 30, 2017, the court entered a consent order based upon that agreement. The 2017 child support order, in addition to providing a monthly sum to the mother for support of the children, also addressed health insurance and cost-sharing for their unreimbursed medical expenses. It contained no provisions regarding attorney's fees or costs for either party.

Subsequently, in 2018, the parties filed various motions. The mother filed motions to modify child support, terminate parenting coordination, and enroll the children in specialized testing. The father filed a motion to modify custody and continue parenting coordination. The circuit court entered a final order on the motions on March 8, 2019 (the 2019 order). That order,

---

[3] Parenting coordination is a form of alternative dispute resolution designed to provide timely relief for "'high conflict parents'" dealing with "'day-to-day' custody and visitation issues." Bower v. Bournay-Bower, 15 N.E.3d 745, 746 n.1, 752 (Mass. 2014) (first quoting Ass'n of Fam. & Conciliation Cts., Guidelines for Parenting Coordination, 44 Fam. Ct. Rev. 164, 165 (2006); and then quoting Matthew J. Sullivan, Parenting Coordination: Coming of Age?, 51 Fam. Ct. Rev. 56, 56 (2013)).

in pertinent part, expressly superseded the 2016 order and CSA, terminated parenting coordination, and granted the mother final decision-making authority for the children, including on the issues of education and religion.

The parties filed objections and competing motions to reconsider. The court denied the father's motion to reconsider. It granted the mother's motion in part with regard to her request for an award of attorney's fees and denied the other aspects of the motion.

The father noted this appeal.

## II. ANALYSIS

The father's ten assignments of error fall into three broad categories.[4] First, he challenges the circuit court's authority to modify or vacate the substantive provisions of the parties' CSA. Second, he disputes the court's authority to vacate the attorney's fees provisions of the CSA and to award attorney's fees to the mother in the proceedings in that court. Third, he contests the court's authority to allow the mother to make certain decisions for the children regarding religion. Additionally, both parties seek an award of attorney's fees on appeal.

Determining whether a particular provision in an order of a circuit court violates a constitution, statute, or common law principle is a question of law in the first instance. See Bergaust v. Flaherty, 57 Va. App. 423, 429 (2011); see also Craig v. Craig, 59 Va. App. 527, 539 (2012) (noting that whether a court has jurisdiction to act is a question of law). Consequently, this Court reviews such provisions de novo. See Bergaust, 57 Va. App. at 429. Similarly, a "trial court's interpretation of [a marital agreement] is an issue of law" that is also reviewed de

---

[4] The father raises an additional assignment of error (labeled assignment of error ten) claiming that the circuit court wrongly denied his motion to reconsider. He limits his argument to the assertion that the motion was "based on many of the same arguments set forth in" his earlier assignments of error and the court's denial of the motion "was error for the same legal [reasons]." We view this assignment of error as subsumed within the others, and we do not separately consider it. See generally Rule 5A:20(e) (requiring adequate authority and argument for each assignment of error).

*novo*.  Stacy v. Stacy, 53 Va. App. 38, 43 (2008) (*en banc*).  Last, to the extent that we find it necessary to consider any underlying facts, we view those facts in the light most favorable to the mother, the party who prevailed on the challenged issues in the circuit court.  See D'Ambrosio v. D'Ambrosio, 45 Va. App. 323, 335 (2005).  It is in light of these principles that we consider the father's assignments of error.

A.  The 2019 Order's Act of Modifying or Vacating Substantive Provisions of the CSA[5]

The father challenges the circuit court's act of vacating the CSA.  He concedes that "provisions of the CSA relating to the care, custody and maintenance of children provided in [Code § ]20-108 are subject to modification."  However, he asserts that the court violated Code §§ 20-109 and -109.1 by terminating provisions that he views as unrelated to custody and visitation.

1.  Background Regarding Substantive Provisions of the CSA

The CSA largely covered child custody and visitation matters.  However, it also encompassed other subjects, including some preliminary property distribution issues, the father's agreement to pay attorney's fees previously incurred by the mother, and the parties' agreement not to interfere in each other's lives.

Primarily, the CSA set a visitation schedule.  It also provided that the parties would have joint legal custody and outlined the terms under which they would make decisions regarding the children.  The mother promised not to relocate outside Northern Virginia with the children, and the parties agreed that the children would attend a particular private school beginning in the 2017-18 academic year.  The parents also agreed to take all necessary steps to maintain the children's enrollment there and to decide jointly on an alternate Virginia private school if either child was not admitted.  Additionally, they agreed how to divide the cost of tuition and how to

_____

[5] This section addresses the father's third through sixth assignments of error.

adjust that division based on any decreases in parental income. Also, the parties were to receive equal access to the children's medical, educational, and other records.

The parties further consented to use a parenting coordinator to resolve disagreements, and they designated Guy W. Van Syckle, Jr., Ph.D., to fill that role. They provided that if the parenting coordinator declared the parties "in a 'stalemate'" on an issue, he was permitted to resolve it in the way that "he believe[d] to be in the best interests of the child or children."

The 2016 order incorporated the CSA "except to the extent . . . expressly superseded by or . . . inconsistent with" modifications of the CSA set out in the 2016 order. The order expressly stated that Dr. Van Syckle's role would "be as set forth in" the CSA. It further provided him with discretionary authority to make recommendations on certain additional matters and permitted either parent to "petition [the] court" if the parent disagreed with Dr. Van Syckle's resolution of such matters. Finally, the 2016 order permitted the parties to reach "mutual . . . agreement" concerning "a Maryland or D.C. private school."

In the mother's 2018 motions, she sought termination of parenting coordination or appointment of an alternate coordinator. She argued that parenting coordination had not helped and, "if anything, . . . ha[d] prolonged and exacerbated disputes," "necessitating repeated court intervention." The mother noted that she had expressly withdrawn her agreement to participate in parenting coordination and asserted that such sessions were "no longer in the best interests of the children." She also asked the court to modify child support and grant her leave to enroll the children in specialized testing. The father sought a modification of custody and continuation of parenting coordination. In the course of these proceedings, each parent presented an award of sole legal custody of the children to that parent as an alternative remedy.

The circuit court's 2019 order ruling on the parties' motions provided that it fully "superseded" the 2016 order and CSA. The 2019 order also expressly granted the mother's

motion to terminate parenting coordination.  Although the court gave the parties joint legal custody, it awarded the mother "final decision-making authority" regarding "what is in the children's best interests" and stated in relevant part that she was "able to accurately assess and meet [the] children's needs [relating to] school, medications[,] and extracurricular[s]."  The 2019 order permitted the father to challenge the mother's best-interests determinations in court but required that the parties first engage in mediation.

The father objected to the 2019 order and made a motion to reconsider on numerous grounds.[6]  The court denied the motion based on its continuing authority pursuant to Code § 20-108 to revise and alter decrees "concerning the care, custody, and maintenance of the children . . . as the circumstances of the parents and the benefit of the children may require."

2.  Challenge to the Circuit Court's 2019 Modification of Substantive Provisions of the CSA

The father challenges the circuit court's act of setting aside the CSA.  We divide the father's related claims into two categories.  First, we consider the court's act of superseding the entire CSA.  Second, we consider specific provisions relating to the children, including the agreement to use a parenting coordinator, the agreement to send the children to a particular private school, and the mother's promise not to relocate with the children.[7]

Generally, once an agreement between divorcing parties is incorporated into a court order, the court no longer has authority over those matters.  See Code §§ 20-109(C), -109.1.  Code § 20-109(C) provides in relevant part that if separating or divorcing parties enter into a valid, signed agreement, the court may not enter a "decree or order directing the payment of

_____

[6] He expressly agreed, however, that the provision giving the parenting coordinator "tie-breaking authority" in disputes between the parents could be set aside by the court.  Thus, we do not consider this aspect of the circuit court's ruling on appeal.

[7] We consider the court's act of setting aside the attorney's fees provisions in the CSA, regarding which the father has presented separate assignments of error, in Part II.B.

support and maintenance for the spouse, suit money, or counsel fee *or establishing or imposing any other condition or consideration, monetary or nonmonetary, . . . except in accordance with that stipulation or contract*." (Emphasis added). Pursuant to Code § 20-109.1, a circuit court has the discretion to affirm, ratify, and incorporate a valid, signed "agreement between the parties, or provisions thereof," into its divorce decree or another related decree. Once the court does so, the agreement or provision becomes "for all purposes . . . a term of the decree" and is "enforceable in the same manner as any provision of such decree." Code § 20-109.1. Consequently, although the circuit court is not required to incorporate an agreement in the first instance, once it does so and the order becomes final under Rule 1:1, the court loses authority to act in contravention of the agreement unless permitted by some other provision of law. See Rook v. Rook, 233 Va. 92, 94-95 (1987) (applying Rule 1:1 to a divorce decree incorporating a property settlement agreement pursuant to Code § 20-109.1).

"Divorcing parents may and, indeed, are encouraged under Virginia public policy[] to reach agreement respecting the[ir children's] care and support . . . ." Shoup v. Shoup, 37 Va. App. 240, 248 (2001) (*en banc*); see Code § 20-109.1; see also Morris v. Morris, 216 Va. 457, 459 (1975) (noting that "public policy favors prompt resolution of disputes concerning the maintenance and care of minor children"). Nevertheless, a circuit court's authority to "exercis[e] its enforcement powers" over an existing order or to "revis[e] child custody and support" continues despite any such agreement. Rook, 233 Va. at 95; see Code §§ 20-108 (authorizing courts to revise child custody and support orders), -109.1 (providing that the ability of parents to contract is "subject to the provisions of [Code] § 20-108"). "[T]he parties may not, by agreement, prevent [a] court from exercising its power to change, modify, or enforce its decree concerning the custody and maintenance of minor children'" Everett v. Carome, 65 Va. App.

177, 189 (2015) (quoting Shoup, 37 Va. App. at 250); see Kelley v. Kelley, 248 Va. 295, 298 (1994); Buchanan v. Buchanan, 170 Va. 458, 477 (1938).

A court may determine that terms of a parental agreement covering child-related matters are in the best interests of the children and incorporate those terms into an order. Shoup, 37 Va. App. at 251. Following such an incorporation, the court may revisit that best interests determination as necessary. See Code § 20-108; Scott v. Rutherfoord, 30 Va. App. 176, 182, 185 (1999). At every stage of a proceeding involving "custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." O'Rourke v. Vuturo, 49 Va. App. 139, 150 (2006) (quoting Farley v. Farley, 9 Va. App. 326, 327-28 (1990)); see also Code § 20-124.3 (listing the criteria for determining best interests).

a. Challenge to Setting Aside the 2016 Order and CSA as a Whole

The father challenges the circuit court's act of "unilaterally vacating" the entire CSA and the 2016 order incorporating it. He asserts that "as to [the] contractual terms that [were] binding [and] . . . non-modifiable" pursuant to Code §§ 20-109(C) and -109.1, the court erred by not reincorporating "all terms of the CSA not superseded by the custody and visitation rulings" into the 2019 order. He points to the court's assertion that Code § 20-109(C) "exclusively concerns universal property settlement agreements, . . . not custody settlement agreements." He suggests that this assertion constitutes a ruling that Code § 20-109(C) does not apply to the CSA and argues that this narrow interpretation of the statute was error.[8]

We accept the general principle that the name given to an agreement by the parties is not dispositive regarding whether its provisions are modifiable pursuant to Code § 20-109(C). See Everett, 65 Va. App. at 180, 185-86, 190 (recognizing the court's statutory authority, despite

---

[8] Although the circuit court made this statement in a footnote in its attorney's fees analysis, it apparently describes the court's rationale with regard to the entire agreement.

- 9 -

Code § 20-109(C), to modify child support terms in a document titled "property settlement agreement"). Rather, it is the nature of the agreement and the specific terms at issue that govern whether a party is entitled to have those terms protected under Code § 20-109(C). Once an agreement is incorporated into an order and the order becomes final under Rule 1:1, a court may not modify that agreement or any of its terms except as permitted by law. See Rook, 233 Va. at 94-95. Consequently, the parties are entitled to protection for all terms of the CSA not involving custody or visitation. See id. Additionally, even as to custody or visitation terms, these may be altered only following an assessment of the best interests of the children. See Code § 20-108.

Here, the circuit court directed that its 2019 order superseded the 2016 order and incorporated CSA in their entirety. This ruling was error because the CSA covered issues that the court lacked authority to alter in its 2019 order, such as issues relating to equitable distribution, non-interference between the parties, and modification of the CSA. Additionally, the CSA dealt with issues related to the children that the court was not asked to revisit and did not state it was considering but that it vacated nonetheless by ordering that the entire CSA was superseded. Those issues included the parents' agreement regarding access to records of the children not involving academics or health. The 2019 order should instead have provided that it superseded the 2016 order and the incorporated CSA only to the extent of a conflict between the two orders.

Consequently, we remand to the circuit court to clarify that the 2019 order does not wholly supersede the 2016 order and incorporated CSA but, instead, does so only to the extent that the terms of the 2016 order conflict with the terms of the 2019 order.

b. Challenge to Supersession of Specific Child-Related Provisions in the CSA

The father also challenges the circuit court's setting aside of specific portions of the CSA: the terms that (1) provide for the use of a parenting coordinator, (2) set out the method for

- 10 -

choosing the children's schools, and (3) restrict the ability of the mother to relocate with the children.[9] The father concedes that the circuit court had ongoing authority over the care and custody of the parties' minor children. Nevertheless, he asserts that these particular provisions do not involve "core custody or visitation conditions" that the court had authority to alter.

"Custody," as used in the statutory scheme, includes legal custody. See Code § 20-124.1; see also Code § 20-108 (authorizing circuit courts to revise child custody and support). Legal custody involves "responsibility for the care and control of the child" and "authority to make decisions concerning the child." Code § 20-124.1. The statutory scheme expressly authorizes the court to award "*any* combination of joint legal and joint physical custody" that the court "deems to be in the best interest of the child." Id. (emphasis added); see Code § 20-124.2(B). Manifestly, therefore, the circuit court retained authority to alter the structure of the *legal* custody arrangement to award the mother final decision-making power on matters concerning the children, subject to the father's authority to request judicial review.[10] See, e.g., Parish v. Spaulding, 257 Va. 357, 362 (1999) (recognizing that whether to permit a parent to move to a different state with the parties' children is governed by a best interests standard); Brown v. Brown, 30 Va. App. 532, 538-39 (1999) (recognizing that resolving a dispute regarding school attendance requires a consideration of best interests).

Accordingly, we hold that the circuit court had authority to set aside the provision of the CSA that required the parties to use a parenting coordinator to make decisions regarding the children. Similarly, it had the authority to vacate the terms of the CSA specifying how the

---

[9] The father also points to a provision in the agreement "addressing the introduction of the children to third parties and a restriction against overnight cohabitation" of a parent with a third party. However, under the express terms of the CSA, that provision expired in 2016. Consequently, we do not address it.

[10] This ruling does not apply to the father's assignment of error regarding the order's religious provisions, which we address separately in Part II.C., *infra*.

parents would choose the children's school and whether the mother could relocate with the children outside Northern Virginia.

The decision in Shoup v. Shoup, 37 Va. App. 240 (2001) (*en banc*), relied upon by the father, does not support a different result. Shoup did not involve a change in circumstances requiring a *reassessment* of the best interests of a child. Instead, the contested provision of the agreement was self-executing in that it took effect upon the occurrence of a change in circumstances anticipated by the parties and expressly provided for in their agreement. 37 Va. App. at 244 n.1, 253-54. Therefore, the holding in Shoup that the circuit court made the only necessary best interests determination at the time it incorporated the parties' agreement into the decree simply is not controlling under the changed circumstances in this case. See id. at 253. The changed circumstances here involve multiple years of attempts by the parties to parent under the terms outlined in the CSA and their inability to reach joint decisions in a timely fashion.

The father also notes that the statutory scheme does not give a circuit court the specific authority to appoint a parenting coordinator. He consequently argues that the court lacked authority to modify the contractual provision between parents agreeing to use parenting coordination services. We reject this conclusion. Virginia law clearly permits a court to award sole legal custody of a child to either parent to achieve the best interest of the child. See Code §§ 20-124.1, -124.2(B). These same principles authorize the court to determine that setting aside an agreement between parents to use a parenting coordinator and awarding final decision-making authority to one parent is also in the best interest of the child. As previously discussed, the fact that the use of such a coordinator can impact the child's best interests proves the point that such a provision is within the circuit court's authority to set aside. Despite the father's arguments to the contrary, Rule 1:1 and *res judicata* principles simply do not apply under these circumstances. See Rook, 233 Va. at 94-95; Everett, 65 Va. App. at 189-90; Shoup, 37 Va. App. at 250.

The father further argues that the parties' agreement in the CSA to use a parenting coordinator was a "non-modifiable" contract between adults and was insulated from the circuit court's authority to re-evaluate whether contractual provisions regarding the care and custody of *the children* remain in their best interests. His challenge is limited to the claim that the court was bound as a matter of law to retain the parenting coordinator provision because it related to the parents' relationship with each other and did not impact the care and custody of the children.

We disagree with this conclusion. As discussed previously, custody matters include legal custody. See Code §§ 20-124.1, -124.2(B). The very purpose of a parenting coordinator, as the name suggests, is to coordinate *parenting* decisions. In this instance, the parties' CSA specifically named the parenting coordinator and required the parents to "cooperate[] and work with [him] on a regular . . . basis in order to fully implement" the CSA's goals regarding legal custody, including safeguarding the children's "emotional, moral, educational, physical[,] and general welfare." The father conceded in the circuit court that "the role of the parenting coordinator . . . in assisting the parties to resolve conflicts over issues of *legal custody*" was "[c]entral to the CSA." (Emphasis added). Accordingly, the court could reasonably have concluded that the children's interests were, in fact, impacted by the ongoing use of a parenting coordinator at any level, thereby providing it with the discretionary authority to alter or remove this provision depending on its assessment of the children's best interests.[11]

---

[11] We acknowledge the mother's argument that this assignment of error should be considered waived under the doctrine prohibiting a litigant from approbating and reprobating because the father filed his own motion for sole legal custody. See generally Babcock & Wilcox Co. v. Areva NP, Inc., 292 Va. 165, 204 (2016) (recognizing that the doctrine applies to both factual and legal assertions). However, we conclude that addressing the circuit court's authority to set aside the parenting coordinator provision on the merits provides the best and narrowest ground for decision. See Abdo v. Commonwealth, 64 Va. App. 468, 473 n.1 (2015) (recognizing that deciding an issue on "'the best and narrowest ground'" as required by "[o]ur jurisprudence" sometimes involves resolving it on "the merits" (quoting Armstead v. Commonwealth, 56 Va. App. 569, 576 (2010))).

Consequently, we hold that the circuit court did not err in concluding that it had legal authority to vacate the terms of the CSA governing the use of a parenting coordinator, the method for choosing a school, and the ability of the mother to relocate with the children.

B.  The 2019 Order's Impact on the Attorney's Fees Provisions in the CSA[12]

The father raises two main challenges to the circuit court's rulings regarding attorney's fees.  First, he contests the court's authority to vacate the attorney's fees provisions of the CSA.  Second, he suggests that those provisions prohibited the court from awarding attorney's fees to the mother in the proceeding below.

1.  Background Regarding Attorney's Fees Provisions in the CSA

The CSA contained two key provisions regarding future attorney's fees.  One permitted a discretionary award of fees upon a breach of the CSA.  The other required that the breaching party first be given written notice and an opportunity to cure the default.  The 2016 order incorporating the CSA acknowledged a dispute between the parties regarding the circumstances under which future attorney's fees might be awarded and specifically noted that it did not resolve that dispute.

Subsequently, in 2018, when the parties filed the various custody and support motions that led to this appeal, they also sought related attorney's fees.  The father argued that the types of attorney's fees recoverable were limited to those listed in the CSA.  The mother responded that the court retained general statutory authority to award attorney's fees in domestic matters.

---

[12] This section addresses the father's seventh through ninth assignments of error.  On July 2, 2020, following oral argument in this Court, the circuit court ruled on a motion tangentially related to these three assignments of error.  Immediately after that ruling, the mother notified us of her intention to file a motion in this Court based on that ruling.  On July 20, 2020, the mother filed a motion asking this Court to dismiss these three assignments of error as moot.  On July 27, 2020, the father filed a response contesting the mother's assertion of mootness.  By separate order, we hold that these assignments of error are not moot.  Thus, we proceed to consider them on the merits.

The court denied the competing requests for attorney's fees. It agreed with the mother that it retained general statutory authority to award fees. The court further noted that it was "inclined to grant" her fee request but opted not to do so at that time based on the confusing nature of some of the entries on her fee statement.

The court then entered its 2019 order, which contained its ruling on the attorney's fees issue. That order specifically stated that it "superseded" the 2016 order and incorporated CSA. The 2019 order also included the following related section, which contains both a modified partial restatement of the first attorney's fees provision in the CSA and an attempt to retain jurisdiction to award fees in the future:

> 5.    *Future Attorney's Fees*
>
> a.    As previously agreed by the parties [in the CSA], in the event [a] party defaults in his or her obligations under the terms of this Order, a Court shall be empowered to award reasonable attorney's fees to the non-breaching or non-defaulting Party after considering the merits of the claims, the merits of the defenses presented, and the result obtained.
>
> b.    Nothing in paragraph [5(a)] shall be construed to limit a Court's jurisdiction to award attorney's fees in the event of a future motion for modification of custody or visitation under the laws of the Commonwealth of Virginia as the equities may require.

The father objected to the new attorney's fees provisions and nullification of the CSA's related terms. The mother filed a motion for reconsideration of the denial of her request for fees. The circuit court rejected the father's assertion that "proceedings for default [under] the CSA [were] the *exclusive* circumstance [under which] a party [might] receive" an award of attorney's fees. (Emphasis added). It reasoned that its "continuing jurisdiction over custody" included the authority to make a related award of attorney's fees. The court further concluded that this jurisdiction could not be nullified by a contract between the parents despite the language in Code § 20-109 permitting parties to contract regarding attorney's fees. It then examined the mother's

- 15 -

attorney's fees statement again, removed the entries that it found confusing, and made an award of attorney's fees to her in a reduced amount.

2. Challenge to the Circuit Court's Modification of Attorney's Fees Provisions in the CSA

The father contends that the court improperly altered the terms of the CSA with regard to attorney's fees. He notes that the 2019 order's paragraph 5(a) provides that fees will be awarded only "upon a breach or default of a party's obligation '*under [the 2019 order]*,' rather than *under '[the CSA]*,'" as the parties had agreed. (Emphases added). The father suggests that the CSA's fee provisions cover all subjects in the CSA, which include not only child custody and visitation—the subjects addressed in the 2019 order—but also "equitable distribution, occupancy rights to the marital home, . . . and other boiler plate [sic] provisions." He maintains that the 2019 order, by referencing only itself and not the CSA, improperly modifies and supersedes these contractual provisions of the CSA. He further emphasizes that the 2019 order fails to mention, and thereby also "eliminates," a "critical component of the fee provisions . . . requir[ing] notice and the opportunity to cure the breach." The father contends that these modifications violate Code § 20-109(C), and he seeks a remand for insertion in the 2019 order of "the original terms . . . of the CSA regarding fees for defaults by a party and the opportunity to cure the breach."

The 2019 order specifically provides that it "supersede[s]" the 2016 order and CSA in their entirety. It then restates a portion of the CSA's provisions regarding attorney's fees in the event of a breach. However, as the father points out, it does so only with regard to the more limited subjects in the 2019 order, which do not cover matters beyond custody, visitation, and support. Also, the 2019 order wholly omits the provision of the CSA setting out that a party accused of breaching the CSA is entitled to written notice and an opportunity to cure the breach. Allowing the existing language in the 2019 order superseding the 2016 order to stand improperly

- 16 -

nullifies the 2016 order's incorporation of the CSA. Thus, the father is correct regarding the impact of the 2019 order on the parties' entitlement to attorney's fees for matters *not* dealing with child custody, visitation, or support, as discussed *supra* in Part II.A.2.[13] Consequently, pursuant to Code § 20-109(C), the father is entitled to have the CSA's attorney's fees provisions regarding both the breach and opportunity to cure maintained and enforced, to the extent that they apply in a given situation.

Accordingly, we remand to the circuit court to remove from its 2019 order the portions that alter the CSA's attorney's fees provisions. Also, as instructed *supra* in Part II.A.2, we direct the court to amend the language of the 2019 order to provide that it supersedes the 2016 order and the incorporated CSA only to the extent that their terms conflict with the 2019 order.

3. Challenge to the Circuit Court's Award of Attorney's Fees to the Mother

The father next argues that the attorney's fees provisions in the CSA limit the circumstances under which a court may award fees to the mother. He suggests that they permit a fee award only in the event of a default under the CSA and consequently did not authorize the court's award of fees for the modification of child custody that occurred in this case. He contends that an incorporated contractual agreement between parties over a pure "'monetary' issue[]" such as attorney's fees is "non-modifiable" under Code §§ 20-109(C) and -109.1. We conclude that the father is partially correct but, nevertheless, that the circuit court's ruling was not reversible error.

---

[13] We address the father's argument regarding attorney's fees for matters that *do* deal with child custody, visitation, or support *infra* in Part II.B.3.

- 17 -

The circuit court awarded attorney's fees to the mother on the theory that its "continuing jurisdiction over custody" issues could not be nullified by a contract between parents.[14]  As previously discussed in Part II.A.2, the court was correct that its authority to decree regarding child support, custody, and visitation cannot be nullified by contract if action is necessary to safeguard the best interests of the children.  See, e.g., Shoup, 37 Va. App. at 250.  However, this Court previously has concluded that *attorney's fees* for such matters do not fall within the court's continuing jurisdiction and thus that the parties retain the right to contract regarding them.  See Everett, 65 Va. App. at 191-92.[15]  Here, too, the court's continuing jurisdiction to safeguard the best interests of the children did not extend to prevent the parties from contracting regarding related attorney's fees.  Therefore, the circuit court relied on a faulty rationale to support its award of attorney's fees to the mother.

Nonetheless, we conclude that other grounds support the circuit court's award of attorney's fees to the mother.  See generally Rickman v. Commonwealth, 294 Va. 531, 542 (2017) (explaining how right-result-different-reason doctrine may support affirmance of a circuit court's ruling).  We reach this conclusion because we hold that the parties' agreement did not deprive the court of the ability to award attorney's fees pursuant to its general statutory authority.

The father relies on Rutledge v. Rutledge, 45 Va. App. 56 (2005), in support of his claim that the CSA barred the 2019 award of attorney's fees.  Rutledge involved an agreement

---

[14] By ruling based on continuing jurisdiction, the circuit court avoided analyzing Rutledge v. Rutledge, 45 Va. App. 56 (2005), a case that the father contends bars a fee award under the terms of the parties' CSA.

[15] In Everett, the Court affirmed an award of attorney's fees to a mother pursuant to an agreement between parents when the father sought a reduction in child support under the agreement.  65 Va. App. at 191-92.  The father had argued that the fee provision was invalid because it "effectively t[ook] away the [circuit] court's jurisdiction to modify [child] support by acting as a barrier to instituting a suit for modification."  Id. at 191.  However, the Court rejected the father's argument, holding expressly that the attorney's fees provision of the agreement was "controlling."  Id.

addressing spousal support. 45 Va. App. at 58. The circuit court granted the wife's request for an increase in spousal support but denied her request for attorney's fees based on the agreement. Id. at 58-60.

This Court affirmed the denial of fees. Id. at 67. In doing so, it pointed to language in Code § 20-109(C) preventing an award of attorney's fees if the award would contravene an agreement that was "signed by the party to whom such relief might otherwise be awarded" and was "filed before entry of a final decree." Id. at 61, 67 (quoting Code § 20-109(C)). The agreement in Rutledge specifically mentioned modification of spousal support, but it was silent regarding whether fees could be awarded to a party seeking a modification. Id. at 58, 64-65. Based on this language, the Court reasoned that the agreement precluded an award of attorney's fees in other circumstances and consequently the circuit court lacked authority to grant the mother's request for fees. Id. at 64-65. The Court in Rutledge also relied on additional terms of the agreement waiving all claims of any sort between the parties that were not provided for in the agreement. Id. at 66-67. Based on that language, too, the Court held that the circuit court lacked authority to award attorney's fees to the wife. Id.

The facts in Rutledge are readily distinguishable from those in the instant case. In Rutledge, the agreement provided for attorney's fees under two specific circumstances not including in the event of an expressly permitted modification of support. Id. at 65. Here, by contrast, the CSA does not reference modifying custody or modifying any of its substantive provisions other than by subsequent agreement of the parties. Nevertheless, the circuit court retained the ability to make such modifications based on its ongoing jurisdiction over child custody and the related provisions of the agreement. Consequently, the CSA's silence regarding attorney's fees in other instances does not carry the same implications as in Rutledge.

- 19 -

In addition, the agreement in <u>Rutledge</u> expressly waived all rights except as provided in the agreement. <u>Id.</u> at 66-67. The instant case, by contrast, involves a much more narrowly worded CSA. The CSA does not purport to be a comprehensive agreement covering all issues between the parties or even all issues relating to child custody and visitation. It does not resolve any issues of child support, which were addressed on a preliminary basis as part of the 2017 equitable distribution and consent orders.[16] Additionally, although the CSA touches on a variety of subjects not directly related to child custody and visitation, it does not purport to do so in a comprehensive manner. A reasonable construction of the CSA is that the parties agreed that in the event of a breach of its specific terms by one party, the circuit court has discretionary authority to award attorney's fees to the non-breaching party and that the parties simply did not have an agreement regarding the availability of attorney's fees for other types of litigation involving custody and visitation. As a result, we conclude that <u>Rutledge</u> does not bar an award of attorney's fees to the mother in this case.

For these reasons, the court retained general authority to make such an award in a matter involving child custody or support. <u>See</u> Code § 20-99(6); <u>Mayer v. Corso-Mayer</u>, 62 Va. App. 713, 733-34 & n.8 (2014). We conclude, therefore, that the court did not err by making an award of attorney's fees to the mother.

### C. The 2019 Order's Provision Regarding Religion[17]

The father also assigns error to the circuit court's decision to grant to the mother "final decision-making authority over issues of religion" for the children.

---

[16] Those orders, in addition to providing a monthly child support award for the mother, also addressed health insurance for the children and cost-sharing for their unreimbursed healthcare expenses. They also contained no provisions regarding attorney's fees or costs for either party.

[17] This section addresses the father's first and second assignments of error.

### 1. Background Regarding the Circuit Court's Ruling on Religion

The circuit court granted final decision-making authority to the mother over the subjects of education, medical treatment, extracurricular activities, and religion. The court provided the father with the right to mediate and litigate specific determinations. In the father's motion to reconsider, he contested the court's inclusion of religion in this list. The court clarified its order in part and implicitly rejected the remainder of the father's challenge.

### 2. Analysis Regarding the 2019 Order's Ruling on Religion

The father asserts that the circuit court erred as a matter of law by granting the mother default decision-making authority about religion for the children.[18] He does not disagree that the mother has the right to raise the children in any religion she chooses when the children are with her. What the father disputes is her ability under the order to dictate or restrict *his* religious activities with the children. He argues that the court's grant to the mother of "final say" regarding religion gives her the affirmative ability to "require that [he] take the children to the church of her choice." The father also contends that the order permits the mother to "veto" his decisions about religious activities for the children during his visitation time. He asserts that the provision is unconstitutional for these reasons.

In ruling on the father's motion to reconsider, the circuit court held that the 2019 order "does not compel" the father "to 'frequent or support any religious worship, place or ministry' in violation of the [father's] constitutional rights." Consequently, we accept the interpretation that the order is limited in this fashion and do not consider this portion of the father's claim. See generally Albert v. Albert, 38 Va. App. 284, 297-98 (2002) (noting that a circuit court has "authority to interpret [its] own orders" and "a reviewing court should give deference to th[at]

---

[18] The father conceded at oral argument that he does not challenge the mother's decision-making authority over the children's extracurricular activities as a means by which she might infringe upon his religious rights. Consequently, we do not consider this issue.

interpretation" (quoting Fredericksburg Constr. Co. v. J. W. Wyne Excavating, Inc., 260 Va. 137, 144 (2000))). The court did not, however, specifically address the father's assertion that the wording of the order permits the mother to "have final decision-making authority about religion for the children *during [the father's] time with the children*." (Emphasis added). We proceed to consider this part of the father's objection.

Parents have a fundamental "liberty interest . . . in the care, custody, and control of their children." Griffin v. Griffin, 41 Va. App. 77, 82 (2003) (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000)). "Custody and visitation disputes between two fit parents involve one parent's fundamental right pitted against the other parent's fundamental right," which courts are permitted to balance under the statutory best-interest-of-the-child test in Code § 20-124.3. Id. at 83. Generally speaking, a court has discretion to award sole legal custody to one parent over another when such an award is in the best interest of the child, thus giving the parent with sole legal custody the authority to make all legal decisions involving the child. See Code §§ 20-124.1, -124.2(B), -124.3.

However, this balancing of the fundamental rights of parents to the care, custody, and control of their children must at times yield to other fundamental rights. For example, "[t]he Free Exercise Clause[s] of the United States Constitution . . . [and] the Constitution of Virginia . . . prohibit state imposition of substantial burdens on the exercise of religion unless the state advances a compelling government interest which is furthered in the least restrictive manner." Roberts v. Roberts, 41 Va. App. 513, 523 (2003) (fourth alteration in original) (quoting Horen v. Commonwealth, 23 Va. App. 735, 742 (1997)). Consequently, a parent exercising visitation cannot be compelled to take his child to church, as the circuit court here expressly recognized. See Carrico v. Blevins, 12 Va. App. 47, 51 (1991). Additionally, the custodial parent may not interfere with the time of the parent exercising visitation in order to take

the child to a place of worship herself.  See id.; see also Lundeen v. Struminger, 209 Va. 548, 551 (1969) (holding that a court violates a parent's rights under the Virginia Constitution by ordering that his or her children must be reared in a particular faith and required to attend religious school and services).  Further, a court or custodial parent may not guide or control the religious activities in which a parent exercising visitation may participate with his child unless such activities cause harm to the child.  See Roberts, 41 Va. App. at 520, 522-24.  Even then, control over religious activities is permitted only to the extent necessary to prevent that harm. See id.

It is in light of these principles that we construe the circuit court's award to the mother of "final decision-making authority" to determine "what is in the children's best interests" with regard to religion.  We conclude that the court's award of authority to the mother regarding religion is limited in scope to those decisions that are, in fact, governed by a best interest standard.  See Geouge v. Traylor, 68 Va. App. 343, 368-69 (2017) (reviewing an alleged infringement of a liberty interest in the "care, custody, and control" of the appellant's children under a state court order (quoting Troxel, 530 U.S. at 65)); see also Commonwealth v. Swann, 290 Va. 194, 196 (2015) (noting that a component of the doctrine of judicial restraint "is that 'unnecessary adjudication of a constitutional issue' should be avoided" (quoting Bell v. Commonwealth, 264 Va. 172, 203 (2002))); cf. F.E. v. G.F.M., 35 Va. App. 648, 669 n.7 (2001) (*en banc*) (recognizing the principle permitting a court to construe a statute "narrowly to save it from unconstitutionality" (citing Va. Soc. for Hum. Life, Inc. v. Caldwell, 256 Va. 151 (1998))).

Consequently, to the extent that religion impacts decision-making regarding other issues to which a best interest standard applies, such as where the children will attend school or summer camp, for example, the mother has authority to make that determination after consultation with the father under the order's best interest standard, subject to mediation and judicial review.

However, to the extent that a decision for the children regarding religion is not governed by a best interest standard, the order does not grant authority over that decision to the mother. As discussed, the best interest standard does not govern decisions that the father makes regarding religious activities in which he chooses to have the children engage during the time that they are with him. See Roberts, 41 Va. App. at 522-24. Thus, such decisions are not within the purview of the decision-making authority that the order grants to the mother over religion. For similar reasons, the father is not required to relinquish his visitation time to the mother for religious activities for the children. See Carrico, 12 Va. App. at 51. The mother acknowledges that the court's order "impose[s] no specific limits" on the father's "ability to exercise or pronounce his views on religion," thereby implicitly conceding the father's decision-making authority in these areas and during the times at issue. Accordingly, we hold that the challenged provision regarding religion is valid.

### D. Attorney's Fees and Costs on Appeal

Each party seeks an award of attorney's fees and costs on appeal.

Pursuant to Rule 5A:30, in specified cases in which attorney's fees and costs are recoverable under Title 20 of the Code of Virginia, the Court of Appeals may award some or all of the fees and costs requested or "remand the issue to the circuit court . . . for a determination thereof." Rule 5A:30(a), (b). Whether to award fees is discretionary. See id.; Alwan v. Alwan, 70 Va. App. 599, 613 (2019). In determining whether to make such an award, the Court may consider factors including whether the requesting party has prevailed, whether the appeal was "fairly debatable" or frivolous, and whether other reasons exist to support an award of attorney's fees and costs. See Rule 5A:30(a), (b)(3)-(4); Brandau v. Brandau, 52 Va. App. 632, 642 (2008); O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). In addition, Rule 5A:30(b)(3) specifically directs this Court to "consider all the equities of the case."

Considering all the factors in Rule 5A:30 and the applicable case law, we see no reason that either party should be required to pay the other's attorney's fees and costs in the instant appeal. Accordingly, in the exercise of our discretion, we decline to award attorney's fees and costs to either party. See, e.g., Wright v. Wright, 61 Va. App. 432, 470 (2013).

## III. CONCLUSION

For the reasons stated, we affirm in part, and reverse and remand in part.

We affirm the circuit court's ruling that it had authority to terminate the parenting coordination, school choice, parental relocation, and other child-related provisions based upon its ongoing authority to safeguard the best interests of the children. We also affirm the court's authority to award attorney's fees to the mother because the CSA does not preclude such an award. Finally, we affirm the court's grant of decision-making authority to the mother over religion because it is limited to decisions that are governed by a best interest standard and does not permit her to usurp the father's parenting time or impair his ability to make decisions regarding religious activities for the children during that time.

We reverse and remand to the circuit court to clarify that the 2016 order and incorporated CSA remain in effect except to the extent that the 2019 order, or other prior orders, expressly supersedes the 2016 order and CSA. The court should also clarify the ongoing effect of the provisions that permit a discretionary award of attorney's fees in the event of a breach of the agreement as long as the non-breaching party provides notice and an opportunity to cure the breach.

Finally, we deny the parties' competing requests for attorney's fees.

Affirmed in part, and reversed and remanded in part.